## WILLIE HALL v. DAISY HALL.

Western Section.   November 13, 1931.

Petition for Certiorari denied by Supreme Court, January 23, 1932.

Charles P. Powell, of Memphis, for plaintiff in error.
Carlton N. Wilkes, of Memphis, for defendant in error.

OWEN, J. This cause should be styled Daisy Hall v. Willie Hall as it is a divorce suit tried according to the rules of procedure governing equity, or chancery, causes.

Willie Hall has appealed from a decree rendered in the Circuit Court of Shelby County, granting Daisy Hall a divorce. The defendant's bank deposit in the First National Bank, amounting to $178, was attached; the attachment was sustained and the Court ordered the defendant to pay the complainant $100 alimony and all costs in the cause. .

The grounds for divorce were cruel and inhuman treatment, failure to provide and abandonment.

The complainant and defendant had married in Shelby County about one year prior to the filing of the complainant's bill. The complainant had been married previously; as to whether the defendant had been married prior to the ceremony performed between him and the complainant, the record is silent.' The complainant was the mother of a daughter, the daughter being about. eighteen years of age.

The defendant filed a plea in abatement, which was overruled; it was not preserved by a bill of exceptions. He also filed other pleas which were likewise disallowed. Thereupon he answered and insisted that no valid marriage existed between the complainant and defendant because she was the wife of one Robert Robinson, whom she had married in Marion, Arkansas, in 1914, and that neither Robinson nor complainant had ever been divorced; that Robinson was still living and the complainant had known the whereabouts of said Robinson ever since they separated. He denied the other allegations in regard to cruel and inhuman treatment, failure to support and abandonment, and insisted that complainant had really run him away from their home.

The cause was heard before Judge A. B. Pittman upon oral testimony and the deposition of Robert Robinson taken at Walls, Mississippi. The Court sustained complainant's bill and granted the decree giving her the relief sought, as heretofore stated allowing her $100 as alimony. The defendant filed a petition to rehear which, he states, the Court did not consider; that it was in the nature of a motion for a new trial. This paper is not preserved by bill of exceptions. Thereupon the defendant prayed an appeal and the same was granted upon his executing a bond with proper securities. He executed an appeal bond and his counsel has assigned five errors.

It is insisted (1) The decree is against the law; (2) The decree is against the weight of the evidence; (3) The Court erred in construing section 4188 of Shannon's Code and holding that under this section of the Code the former marriage of the appellee to Robert Robinson was dissolved for the purpose of this case; (4) The Court

erred in refusing to allow counsel for appellant to complete cross-examination of the witnesses; (5) The Court erred in not granting the continuance of the cause on the second day of the trial when it was announced to the Court that appellant's attorney had suffered injuries on the night before which prevented him from returning to complete the trial of the cause. We will dispose of these assignments in reverse order.

It is insisted that the Court should have granted a mistrial when counsel for the defendant did not appear on the second day of the trial, or granted a continuance as a matter of common courtesy to the attorney. The record does not sustain this assignment in the slightest way. What really took place is reflected from the bill of exceptions as follows: On page 57 of the record, which page is not cited by counsel in his brief or assignments of error, and which, according to the rules of this Court, is bad, and we would not consider the assignment if it was not insisted that as a matter of common courtesy to an attorney at the bar this consideration (meaning the continuance as insisted by the assignment) should have been granted or a mistrial declared.

> "Defendant's counsel, Charles P. Powell, was injured on Thursday evening and was unable to be present the next morning when Court conveyed. This fact was announced to the Court the next morning by the Honorable Thomas J. Walsh, an ·attorney· at the bar, and a law partner with Charles P. Powell. Mr. Walsh asked that the case either be continued or that he be informed of what had gone before when he was then given an opportunity to talk with witnesses and statement was made to him of the substance of all the testimony that had been given. Whereupon, hearing was resumed and proceeded with and the following evidence heard."

The bill of exceptions shows that while Mr. Charles P. Powell was unable to be present the next morning when Court convened and the case was on trial, Mr. Thomas J. Walsh, a law partner with Charles P. Powell, did appear and asked that either the case be continued or that he be informed of what had gone before. He was then given an opportunity, talked with witnesses and a statement was made to him (Walsh) on the substance of all the testimony that had been given. Whereupon hearing was resumed and proceeded with and the following evidence heard: Then follows several pages more of testimony offered by the defendant. Walsh, it appears, was Powells' law partner and the Court was requested to either grant a continuance or that Walsh be informed of what had transpired in the trial. The latter request was granted. It results that the fifth assignment is overruled; it is without merit.

The fourth assignment is not a good assignment because no page of the record is cited where the Court refused to let the defendant's counsel further examine, or complete cross-examination of the witnesses. What really took place and is complained of appears as follows: The Court refused to permit defendant's attorney to further cross-examine plaintiff's witness, Charles Kinder, because counsel "persistently asked irrelevant and immaterial questions, which, in the opinion of the Court, was accomplishing nothing except the unnecessary waste of time." As we have not the questions before us, or what further information, if any, defendant's counsel was seeking to obtain from the witness Kinder, we must assume that counsel was asking irrelevant and immaterial questions and was accomplishing nothing except the unnecessary waste of time. Attorneys are given very wide latitude in the cross-examination of witnesses, but trial Judges have the right to make proper rulings as to the limit or extent of the cross-examination and when the trial Judge is of the opinion that an attorney is only wasting time by his cross-examination, and he so rules nothing further appearing we hold that the trial Judge was ruling properly, and was but expressing his sound discretion as to when the cross-examination ceased to be material and became irrelevant and immaterial. The fourth assignment is overruled.

We will dispose of the other three assignments together. By a preponderance of the evidence the complainant established the fact that the defendant had given her a very severe beating, that at one time just a day or two before the bill was filed he threw a tea cup at the complainant, aiming at her face or head; she warded off the blow from the cup by throwing up her hand, the cup broke and cut the complainant's hand. One witness saw him down on the complainant, beating her in the little store that the complainant and defendant operated. Other witnesses testified that the complainant had serious bruises, wounds and marks of violence on her person as a result of the severe beatings the defendant gave the complainant within a short time prior to the filing of the bill. The defendant insists that the complainant stated in her bill that he was the father of her child. The bill does not warrant this statement. The complainant had been living in Shelby County for many years; the defendant had only lived in the County about one year. They were married April 21, 1930. The bill then states "that she and the defendant had one child named Sarah Henry who is now eighteen years of age." She testified frankly that was not the defendant's child; she does not mean by this bill that Sarah Henry was born to complainant and was the child of the defendant. We gather that this complainant meant that the family was composed of herself and husband and this girl, Sarah Henry. The complainant was frank

in her testimony as to who was the father of the girl, Sarah Henry. The complainant had been married in Marion, Arkansas, in 1914, to one Robert Robinson. The record reflects that all these parties are colored and they are rather ignorant. She testified that Robert Robinson deserted her while she was sick in Newhart, Arkansas; that he ran off with another woman and she had never heard from him prior to her marriage to the defendant. She had witnesses to testify that they had lived near the complainant since 1922 to the time of her marriage to the defendant and that they had never heard of Robert Robinson. It appears that Robert Robinson was located at Walls, Mississippi, and his deposition was taken; he says he never got a divorce from the complainant; she never got a divorce from Robert; that she know nothing of the whereabouts of Robert at the time she married defendant; the defendant says his wife told him that Robert Robinson was dead. Robert refused to come to Memphis to testify although he says that the defendant and defendant's counsel offered him $25; states that he was first offered $10; that he refused to come for $10 but he offered himself at a salary and defendant's counsel would not agree to pay the salary, which was $25, but he says he was willing to come for $50; but later in his deposition he said he "wouldn't go now for $50." Robert can neither read nor write. He claims that in 1927 he wrote the complainant a letter which was mailed from some point in Mississippi and addressed to Mrs. Daisy Robinson, 359 Cottage Street, Memphis, Tennessee; that he got some friend to write this letter, which is as follows:

"September 23, 1927.

"My dear Wife:

"Just a few lines to let you hear from me. I am well and hope when these few lines come to your hand it will find you the same. I don't know when I will get a chance to come home. I sent you $600 a few days ago. Write and let me know did you get it. I won't say any more until I see you. So good by.

"From your Humber, Robert Robinson."

The complainant says she never lived at 395 Cottage Street, Memphis; she certainly never received the letter as they claimed, and Robert says he came to Memphis, he don't know when, and called at 395 Cottage Street and he was given the letter. We quote from Robert's testimony further as follows:

"Q. 8. When and where did you marry Daisy Carter?

"Mr. Wilkes: We object to that.

"A. I married her in Arkansas, at Marion.

"Q. 9. Marion, Arkansas. Do you know in what year you married her, Robert? A. '14.

"Q. 10. In 1914. Robert, have you ever been divorced from the woman Daisy, whom you married in Marion, Arkansas? A. You say was I?

"Q. 11. Have you ever been divorced from her? A. 11. Yes, sir. Yes, sir. I don't marry but what I be divorced.

"Q. 12. What is that? A. I don't marry without I do divorce them.

"Q. 13. When and where did you divorce her? A. In Marion.

"Q. 14. In what year did you divorce Daisy Robinson? A. I don't know that, but I think it was in 1913, if I make no mistake. You go over to Marion and they will tell you. Lawyer Southwall was my lawyer and Lawyer Neely was another one. I got two over there.

"Q. 15. Robert, do you understand what I mean by divorce? A. You asked me did I divorce before I married Daisy; didn't you?

"Q. 16. No. A. Did I understand you to say that?

"Q. 17. No; that wasn't my question. My question is did you divorce Daisy Robinson? A. No, sir; I didn't divorce her.

"Q. 18. Now, since you married Daisy where have you lived? A. Oh, I couldn't begin to tell you where I have lived since me and her quit. Lived at Newark, Arkansas, when we were together, on W. R. Barksdale's place."

He further testified that he left Daisy in Arkansas in 1922, and he didn't know where she had lived since he left her. The record fails to show, and no one asked Robert if he had since married, but he said he doesn't marry without divorcing them. Whether or not in his evidence he meant he had two lawyers in Marion, Arkansas, or whether he got two divorces there, or whether Mr. Southwall got one divorce and Lawyer Neely got another divorce we are somewhat in doubt. As to whether a marriage was regularly solemnized between the complainant and defendant, the law presumes this marriage was valid and casts upon the defendant the burden of proof to show it was invalid. Gamble v. Rucker, 124 Tenn., 416, 137 S. W., 499.

Mr. Justice Neil in delivering the opinion in the Gamble case, supra, said: "The presumption in favor of the validity of the marriage is very strong, and the pressure of that presumption is left at every stage of the inquiry; evidence that a divorce was not obtained before a second marriage was entered into by a party to a former marriage must be cogent and convincing to overcome the validity of the second marriage." See numerous cases cited on page 418 of 124 Tenn.; 1 Bishop, Mar. & Div., sec. 457.

Section 4188 of Shannon's Code provides that a second marriage cannot be contracted before the dissolution of the first, but the first shall be regarded as dissolved for this purpose if either party has been absent five years and is not known to the other to be living. The proof shows that the complainant had not heard from the first husband, Robert Robinson; knew nothing about his whereabouts for eight years prior to her marriage to the defendant.

We hold that the complainant contracted a legal marriage under the facts in this case with the defendant by virtue of section 4188 of Shannon's Code just quoted and furthermore we do not think the evidence, or testimony, of Robert Robinson is clear, cogent and convincing that he had not obtained a divorce from the complainant and his testimony in the uncertain and contradictory manner is not sufficient to overcome the presumption that a divorce was granted divorcing Robert and the complainant.

It results that all assignments of error are overruled and disallowed, the judgment of the lower Court is affirmed, and the complainant will recover of defendant and his surety on appeal bond $100 with interest thereon from the date of the rendition of the judgment in favor of the complainant in the lower Court, and all the costs of the cause, including the costs of the appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.