## No. 16,654.

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN ET AL. *v.* INDUSTRIAL COMMISSION ET AL.

(234 P. [2d] 901)

Decided July 2, 1951.

Messrs. Shuteran, Robinson & Harrington, Mr. Richard L. Banta, Jr., for plaintiffs in error.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Peter L. Dye, Assistant, for defendant in error Industrial Commission.

*En banc.*

Mr. Chief Justice Jackson delivered the opinion of the court.

This is a workmen's compensation case. Antonio P. Fernandez, alleged husband of claimant, died as a result of an accident while performing services arising out of and in the course of his employment. The sole question presented is whether claimant is entitled to benefits as his dependent wife.

The referee found that decedent "left surviving him and totally dependent upon him his common law widow, Tillie Fernandez, who had lived with him openly and notoriously as his wife from January, 1947 to the date of his death [July 31, 1950]." The Industrial Commission approved, affirmed and adopted the referee's order, and in a subsequent proceeding brought by employer and insurer in the district court the latter affirmed the award of the commission. It is this judgment of the district court that the employer and insurer seek to reverse on this review.

It is the contention of the employer and insurer that decedent left surviving no person or persons who were wholly or partially dependent upon him, or who are

entitled to receive death benefits for which provision is made by the Workmen's Compensation Act, sections 331, 332, chapter 97, '35 C.S.A., in that: "(a) Deceased was not married; (b) Deceased left surviving him no minor children; and (c) Deceased did not wholly or partially support others who would be considered actual dependents."

In her notice and claim for compensation, claimant, born April 14, 1924, alleged that she and decedent were married January 15, 1947, at Denver, Colorado; that she had been previously married but was divorced from her prior husband, and that she was the widow of decedent. Claimant's evidence shows that she was married to one Louie Marques April 17, 1944, and lived with him for about two years; that thereafter she instituted divorce proceedings, and introduced as exhibit A an unauthenticated copy of an interlocutory decree of divorce dated August 5, 1946. It was stipulated by counsel that under Colorado law an interlocutory decree of divorce becomes final six months from the date it is so entered. It thus is apparent that claimant could not have received a final decree of divorce earlier than February 5, 1947. Claimant's testimony was that her marriage to Marques was solemnized by a formal wedding ceremony, but that she did not enter into any ceremony of marriage with decedent. She claimed to have cohabited with him, however, from January 15, 1947, until his death. No children were born of this relationship. Claimant further testified that she was employed during the period of cohabitation; that the funeral arrangements for decedent were handled by decedent's father, and that she made no payments toward his burial. Claimant's evidence consisted of her own testimony and that of two other witnesses. Mary Ann Lopez testified that claimant "ran under [the name] Fernandez;" that she had known claimant all her life; that in April 1947 she met Fernandez; that she knew of claimant's prior marriage, and was aware that claimant had never obtained a license or gone through a civil or reli-

gious ceremony to marry Fernandez, and that he and claimant lived together as man and wife from April 1947 until his death. Ysmal Florez testified that he met decedent in the Army in 1946 and that once, sometime in 1947, decedent introduced claimant to him as decedent's wife, and that after that time she had lived with decedent as his wife.

It is urged that the trial court erred in refusing to set aside the findings of fact and awards of the Industrial Commission, on the ground that the latter acted in excess of its powers in finding that a common-law marriage existed under the disclosed facts, for the following reasons: 1. The record is utterly void of evidence of a contract or agreement between claimant and decedent to marry; 2. a common-law marriage has not been established by substantial evidence of either cohabitation as man and wife or general repute of marriage.

As to the first point, we agree with counsel for the insurer that the record discloses no evidence of a contract or agreement between claimant and decedent to marry. Claimant, by her testimony, shows that she commenced living with decedent January 15, 1947, which was prior to the time when final decree of divorce was in effect separating her from the father of her one child. She testified that she met decedent while they were both employees of a mushroom plant near Broomfield; that they began living together at the time he left that employment; that she also left that employment shortly afterwards; that between the time they commenced living together and the time of his death they resided on South Santa Fe Avenue; later in Westminster; and then on Arapahoe Street; that in the interval between January 15, 1947, and the date of decedent's death, July 31, 1950, in addition to being employed at the mushroom plant, she had been employed for nine months by the Ellis Canning Company, and at the time of decedent's death was employed at the Edwin Hotel in Denver. During the same period they went to California for a

visit. In answer to the question as to who made arrangements with the mortuary after the death of decedent, she answered: "My father-in-law took care of all of that. I don't know what happened." After the direct and cross-examination, the referee interrogated claimant as follows: "Q. Why was it that you two started living together and didn't have a ceremony performed? A. Oh, I don't know. I never thought I would get married or something. Q. Had Mr. Fernandez been married before? A. No, sir. Q. You had been married before. You knew it was customary to have a legal or religious ceremony. Why was it that you didn't have such a ceremony? A. Oh, I don't know. Just didn't."

There is nothing in the record showing that claimant's daughter ever lived with her mother after the latter began living with decedent. All that we find regarding the situation is the following: "Q. Does that child live with you? A. Right now she is staying with my sister. Q. But she wasn't a dependent of Mr. Fernandez? A. Yes. He hadn't adopted her, no, but I had to give my sister so much money to help support the baby. Q. But he never adopted her legally? A. No. Q. Did the child go under your name? A. Marques. Q. Not Fernandez? A. No."

From an examination of the entire record, we are of the opinion that the evidence is insufficient to bring what apparently began as a casual relationship into the more substantial one of a common-law marriage. In *Zuzich v. Leyden Lignite Co.*, 120 Colo. 21, 206 P. (2d) 833, in which we affirmed the judgment of the trial court, which in turn had affirmed the award of the Industrial Commission disallowing a claim by one who asserted that she was the common-law widow of deceased, claimant admittedly kept house for decedent and was dependent upon him for her living during the period they lived together. In the instant case, for all that appears in the record, claimant, although living with decedent, was, at the same time, a wage earner. There is scant evidence of depend-

ency. The only debts they contracted were for furniture. She said those debts were in her name, as well as his, and she was having to finish paying them. There is nothing in the record to show that claimant's daughter lived with her during the period of her cohabitation with decedent. It is to be noted that claimant used the first personal pronoun when she stated, *"I* had to give my sister so much money to help support the baby."

It is apparent from the testimony that, during the time of her cohabitation with decedent, claimant lived in three different places and had three different employments — all of which might well be expected to afford some evidence as to the facts and reputation concerning her alleged common-law marriage to decedent. There also would appear to be available the employee's withholding exemption certificate in connection with decedent's employment, indicating whether, at the places where he was employed after January 15, 1947, he claimed exemption as a married man or as a single person; likewise there should appear the same information at the places at which claimant was employed. The relation of landlord and tenant at the three places where they resided should also have afforded some indication as to how claimant and decedent held themselves out to the various landlords.

It was held in *Peery v. Peery,* 27 Colo. App. 533, 150 Pac. 329, that evidence concerning a common-law marriage should be clear, consistent and convincing; and in *Estate of Klipfel v. Klipfel,* 41 Colo. 40, 92 Pac. 26, we ruled that to establish the presumption of marriage by cohabitation and repute, the marriage contract must be established by convincing and positive evidence. We cannot say that the evidence in this case satisfies the foregoing requirements. In our judgment it is too scanty, dubious and even contradictary. At the same time it discloses many places and persons where and from whom more convincing evidence might be obtained, followed by a failure to present such evidence.

We believe the judgment should be, and it hereby is, reversed, and the cause remanded with instructions to enter a decree remanding the case to the Industrial Commission with directions to set aside its award in favor of claimant, but with leave to claimant to present further evidence in support of her claim, should she so desire.

MR. JUSTICE HILLIARD dissents.