### CHARLES CUNEO v. LENA G. DE CUNEO.

Decided November 7, 1900.

1. **Divorce—Common Law Marriage—Pleading and Proof.**

In an action for divorce, under a general allegation of marriage, a common law marriage may be shown in evidence.

2. **Same—Evidence—General Reputation—Address of Letters.**

In an action of divorce, evidence of general reputation is admissible to prove the marriage, and the addresses of letters written to the alleged wife may be given in evidence to show such reputation.

3. **Same—Presumption of Competency for Marriage.**

Where it is shown that the parties are man and woman, and of age at the time of the alleged marriage, it will be presumed, in the absence of proof to the contrary, that no impediment to their marriage existed.

4. **Same—Issue of Incompetency—Request for Charge Necessary.**

If defendant in an action for divorce deemed the evidence sufficient to raise the issue of plaintiff's incompetency to marry him on the ground that a prior husband was living at that time, he should have requested a special charge upon that issue.

5. **Same—Common Law Marriage—Cohabitation.**

It is not sufficient to constitute a common law marriage that there was cohabitation under an agreement to marry in the future. See the opinion for a full statement of the principles applicable to such a marriage.

6. **Same.**

Where, at the time cohabitation was begun, there was no marriage contract, the mere continuance of the cohabitation as man and wife, without something more to

indicate a change in the relations of the parties, is not sufficient to show a marriage in fact subsequent to the commencement of the cohabitation.

**7.  Same—Evidence—Former Suit—Estoppel.**

The fact that plaintiff in an action for divorce had once brought suit against defendant for breach of promise of marriage, which suit was dismissed by her, does not estop her from asserting that she was at such former time actually married to the defendant, but the allegations in the petition in such former suit are admissible as declarations against interest to show that she was not then married to defendant, as also is evidence that upon her testimony in a criminal action the defendant had been formerly convicted of illicit cohabitation with her.

APPEAL from Bexar.  Tried below before Hon. R. B. GREEN.

*Bryan Callaghan* and *T. F. Shields,* for appellant.

*Lewy & Sehorn,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee against appellant for a divorce, and partition of their alleged community property.   The case was tried before a jury, and upon their verdict judgment was rendered in favor of appellee, both for the divorce and her interest in the alleged community property.   The appellant denied that he was ever married to appellee; and as the issue of marriage is the principal one involved in the case, only such questions raised by the assignments of errors as are pertinent to it will be considered.   It is indisputable that the parties were never married by license, or in the manner provided by statute, and that no marriage ceremony of any character was ever performed uniting them as husband and wife.   If married, it was what is termed a common-law marriage; and this was the kind of marriage which was sought on appellee's part to establish and by the appellant to disprove.

The petition for divorce, which was filed May 8th, alleged that plaintiff was married to defendant about twenty-five years ago, in Bexar County, Texas, and that up to the last few years plaintiff had been living with defendant as his wife.   No exception was interposed by defendant to the sufficiency of the petition as to the allegation of marriage; but when evidence was offered to prove a common-law marriage, it was objected to upon the ground that the facts constituting such marriage were not alleged in her pleadings.   If the allegations were deemed insufficient, the petition should have been excepted to upon that ground.   The objection came too late when made to the evidence.   But we have been cited to no authority holding that in a suit for a divorce it is essential for the pleader to allege the facts constituting a marriage of any kind, and we know of none.   The general rule is that a party is not required to plead his evidence.   Marriage is as clearly defined and its meaning as well known as perhaps any other word in the English language; and when the relation is alleged to exist between parties, each knows the facts necessary to constitute it must be proven.   2 Bish. Mar. and Div., sec. 332; Farley v. Farley, 54 Ala., 501, 10 So. Rep., 646.   We think, therefore, that whatever evidence was pertinent to the issue,

whether it tended to show a marriage valid at common law or by statute, was admissible under the pleadings. Williams v. Williams, 46 Wis., 464.

It is urged by appellant that general reputation is inadmissible to prove marriage in divorce proceedings. "There are many ways in which the contract of marriage may be proven. A frequent mode is to show the reputation as married persons of the parties whose marriage is in issue." Rodg. Dom. Rel., sec. 93. In most cases marriage is proved by general reputation, cohabitation, and acknowledgment. This species of evidence is admissible in all cases, except actions to recover damages for adultery and indictment for bigamy. Taylor, Ev., sec. 517; Jackson v. Jackson, 80 Md., 176, 30 Atl. Rep., 753. "When a man and woman live together as husband and wife, recognizing each other as such, being so reputed among their friends, relatives, and acquaintances, the inference or presumption is that such conduct, holding out, and reputation are inconsistent with anything short of a valid marriage. But the reputation which will be considered in law as sufficient proof of a marriage contract must be uniform and undivided; must be permanent and not changing; must be in good faith, and not built up for the purpose of shielding either party from disgrace or improper motive. An acknowledgment of the marital relation at one time, and a denial at another, is not a sufficient holding out or reputation of marriage to establish the status. It must be to all persons, at all times, on all occasions, under all circumstances, to friends, relatives, and strangers alike, and in the fullest sense, uniform, undivided, and continuing." Rodg. Dom. Rel., secs. 93, 94, and authorities cited in note; Williams v. Herricks, 43 Atl. Rep., 1036. Such reputation, holding out, and acknowledgment do not constitute marriage, but are only evidence of it. The weaker the general reputation of marriage, the less would be its effect in producing the conviction that it really existed. And matters of suspicion, if not sufficiently explained, would, in proportion to their gravity, weaken the proposed inference, or might defeat it altogether. Jackson v. Jackson, supra. From the uniform authority and the principle upon which it is grounded, there can be no doubt that the evidence of general reputation introduced by the plaintiff to prove marriage was admissible for that purpose. And as the addresses of various letters written her tend to show she was regarded and addressed by the writers as Mrs. Cuneo, such addresses were admissible as evidence of general reputation.

The court instructed the jury: "That a common-law marriage is valid in the State of Texas, and that the issuance of a license is not necessary to constitute a valid common-law marriage. A common-law marriage exists when the man and woman enter into an agreement to become husband and wife, and live together as husband and wife, and in pursuance of such agreement do live together and cohabit as husband and wife, and hold each other out to the public as husband and wife. Said agreement to become husband and wife may be express or implied. An express agreement is where the parties thereto expressly agree; an implied agreement is one where the conduct of the parties with reference to the subject matter is such as to induce the belief that they intended to

· do that which their acts indicate they have done. If you believe from the evidence that the plaintiff and defendant agreed to become husband and wife as claimed by the plaintiff, and that in pursuance of said agreement they lived together and cohabited as husband and wife, and held themselves out to the world as husband and wife, you will find for the plaintiff on this issue." This charge is assigned as error.

That a marriage according to common law is valid, without regard to observance of statutory regulations, is now settled law in this State. Ingersol v. McWillie, 9 Texas Civ. App., 543; Coleman v. Vollmer, 31 S. W. Rep., 413; Chapman v. Chapman, 11 Texas Civ. App., 392, 16 Texas Civ. App., 382; Simmons v. Simmons, 39 S. W. Rep., 639; Cumby v. Henderson, 6 Texas Civ. App., 519; Railway v. Cody, 20 Texas Civ. App., 520. Nor do we understand that this proposition is controverted by appellant's counsel. But the objections to the charge are: (1) No issue of such marriage is made by the pleadings; (2) it fails to inform the jury that to constitute such marriage the parties must be competent to contract marriage; (3) that there was no evidence tending to show facts essential to constitute a common-law marriage; and (4) that the evidence did not authorize the submission of an implied agreement of marriage.

As to the first objection, nothing more need be said to demonstrate that it is untenable, for we have already held that under the general allegation of marriage any kind of valid marriage can be shown. Rodg. Dom. Rel., sec. 105. From the facts that the parties are man and woman, and were of age at the time of the alleged marriage, it will be presumed, in the absence of proof to the contrary, that no impediment to their marriage existed, and that they were competent to enter into the marriage state. If appellant deemed the evidence was sufficient to raise the issue of plaintiff's incompetency upon the ground that her husband of a prior marriage was living when it is claimed she married him, he should have requested a special charge upon such issue. As the other two objections to the charge go to the sufficiency of the evidence, they will be treated in connection with the assignment of error which complains of the insufficiency of the evidence. In doing so we will first state, as we understand them, the principles of law applicable to the facts in this case by which a common law marriage is determined.

The present consent and agreement between the parties is the gist of a common-law marriage. It requires only the agreement of the man and woman to become then and henceforth husband and wife. When this takes place the marriage is complete. Simmons v. Simmons, 39 S. W. Rep., 639. It is not sufficient to agree upon a present cohabitation and a future marriage. 1 Bish. Mar., Div. and Sep., sec. 262; Cartwright v. McGown, 121 Ill., 388, 12 N. E. Rep., 737. It is required that the cohabitation be as man and wife, and in pursuance of the marriage contract. It can, of itself, be no part of the marriage contract, except it take place after, and not before the agreement. Soper v. Hasley, 85 Hun, 464, 33 N. Y. S., 105; Farley v. Farley, supra. "A consent de praesenti is essential to such a marriage, and a subsequent marriage is es-

tablished by a proof of a promise and a copula, on the ground that the copula was a consequence and performance of an anterior promise." The copula does not constitute marriage, but it is taken, when circumstances justify it, as evidence of the performance of a previous promise." Rodg. Dom. Rel., sec. 87; Simmons v. Simmons, supra.

"Cohabitation between a man and woman as man and wife is usually regarded in law as evidence of marriage, and entitled to more or less weight according to circumstances. The cohabitation necessary to follow a contract of marriage per verba de futuro must be an actual dwelling together by the parties as husband and wife, and a mutual recognition of each other as such in pursuance of the marriage contract. A mere illicit intercourse, though extending over a long period, can never have the effect of validating or consummating a marriage dependent upon cohabitation to complete it." Rodg. Dom. Rel., sec. 96, and authorities cited. Living and cohabiting as husband and wife, or declarations of the parties that they are husband and wife, do not of themselves constitute a marriage in fact. Such acts and declarations are not a substitute for the marriage contract, but are only evidence that may be sufficient to prove a lawful marriage. And when the evidence shows that at the time of the commencement of the cohabitation and conduct from which it is sought to prove a marriage in fact, there was in fact no marriage, the mere continuance of such cohabitation and conduct, without something more to indicate that there had been a change in the relations of the parties to each other, would not be sufficient to show a marriage in fact, subsequent to the commencement of such cohabitation and conduct. But the presumption against marriage, when the connection between the parties is shown to have been illicit in origin, may be overcome by proof showing that the original connection has changed its character, and a subsequent marriage may be proved by circumstances. The circumstances, however, must be such as to exclude the inference or presumptions that the former relation continued, and show that it had been changed into that of actual matrimony by mutual consent. Williams v. Williams, 46 Wis., 464, 1 N. W. Rep., 98; 2 Kent, sec. 87; 2 Greenl. Ev., sec. 464; Jackson v. Claw, 18 Johns., 386.

The appellee's first husband was Francisco Ramez, whom, according to her testimony, she married in 1854. She says she was never divorced from him, but that she married Martiano Rodriguez in 1870, while Ramez, her first husband who died in 1875, was living; that she went from San Antonio to Austin to see her first husband, who was killed there on the 17th of April, 1875. When she arrived she found that he had been buried. There she met Cuneo, and there during the first days of May, 1875, he proposed to marry her, and gave her a ring with his name in it. In answer to his proposition she stated that she could not do anything without seeing her father, but if he consented it would be all right. That they then went from Austin to San Antonio, traveling alone three days together, for the purpose of getting her father's consent to the marriage, his wedding blessing, and a license to marry. That upon reaching San Antonio, Cuneo asked her father's consent to the

marriage. Her father answered that if it was appellee's wish, it would be the same thing with him. She told her father that it was her wish; then Cuneo stated to her father and her that they would go to New Braunfels and get married. They returned to Austin via New Braunfels. In going to New Braunfels they did not pass as husband and wife; but when they arrived there she says: "He presented me to his Italian friends as his wife, and stated he married me here in San Antonio. He went to the hotel and there stated we were married, and they gave us a room and we slept in that room. When he made the statement that we were married in San Antonio, I did not contradict it. I was actually passing, because I saw right there that he was actually fooling me when he told his friends in New Braunfels that he had married me in San Antonio. I was so overcome with shame, because he was fooling me, that I could not answer. I knew he was telling those people a falsehood in stating I was his wife. From that time on we commenced living together as husband and wife. When we first commenced living together the agreement was that we should live together as husband and wife. We lived together twenty-four years, going on twenty-five. During all that time I lived with him as his wife."

The testimony shows that the parties lived in Austin from some time in May, 1875, until the fall of 1889. During all that time appellant kept a brothel and dance-house, and, to use appellee's expression, was the king bee of the lewd women that dwelt in and frequented them. She cleaned up the house, made up the beds, cooked for and waited upon these inmates of appellant's bagnio; and, in such employment, was kept so busy by her heartless husband that she didn't even have time to go to morning and evening mass. This we may remark, though not the refinement of cruelty, was cruelty of the grossest nature,—though not alleged as a ground for divorce. In mitigation of this cruelty, however, it may be said, in palliation of appellant's conduct, that, if her testimony is true, she was allowed time by him to stand at the baptismal fount as godmother for the innocent babe of a dear friend.

She says that during all the time she worked at his house Cuneo was paying her for her services at the rate of from four to six dollars per week, and her board. A number of witnesses for appellee testified that the parties, while living in Austin, and after they moved to San Antonio, were reputed to be husband and wife; that appellant recognized and held her out to the community as his wife. About the same number of witnesses testified for appellant that they were not reputed in either community to sustain such relation to each other, and that he never acknowledged or held her out to the public as his wife. Appellant denied that he ever married her, recognized, or held her out to the community as his wife; that he ever cohabited or lived with her as her husband. He testified that during all the time she lived with him she was his house-keeper and hired servant.

On the 27th of September, 1875, after she claims she was married to appellant, appellee, by the name of Lena de la Garza, filed suit in the District Court of Travis County, Texas, against appellant for $5000

damages for an alleged breach of promise to marry her. She alleged in her petition: "That on the 29th day of May, 1875, in consideration of petitioner being unmarried, she at the request of defendant undertook and promised to marry him, and defendant undertook and then promised to marry her; that confiding in said promise of defendant she hath always from then remained and is still unmarried, and was during all the time aforesaid ready and willing to marry him;  *  *  *  that defendant, disregarding his said promise, hath deceived her, in that he wholly neglected and refused to marry her; that at the time said promise of marriage was made by defendant to her, she was poor, without means of her own, which facts defendant knew, and at his instance and request she went to the house of defendant on the 28th day of May, 1875, and commenced working for him in keeping house, cooking his meals, and doing other work for defendant, in which service she remained until the 24th day of September, 1875, which work and labor done by her for defendant at his instance and request, was reasonably worth the sum of two hundred dollars, but for which defendant never paid her anything whatever," etc.

The defendant, Charles Cuneo, on the 7th of October, 1875, answered in the case by a general denial. On the same day a paper was filed in said case which in writing is as follows: "I authorize the suit against Charles Cuneo in my favor to be dismissed, the same having been amicably adjusted, and I at this time have no claim against him whatever. Austin, Texas, October 4, 1875. (Signed) Lena de la Garza."

On December 4, 1878, the suit was dismissed at plaintiff's costs. The undisputed evidence shows that the parties to that suit are the same as those to the one at bar.

We will say here that the record in that case does not, as is contended by appellant, constitute either an estoppel by record or in pais against appellee ever afterwards setting up and seeking to establish a common-law marriage antecedent to the dismissal of said cause. If a marriage did in fact exist, the plaintiff could only be estopped from proving it by a decree of court of competent jurisdiction dissolving such relation. Such a decree only would constitute an estoppel by record. Such a thing as either party to an actual marriage being estopped in pais from showing its existence is something unknown to and unrecognized by the law. But all the allegations in plaintiff's petition were admissible as declarations against her interest, as evidence to prove that the relation of husband and wife did not exist between the parties at the time the suit was filed, nor when she signed the paper authorizing its dismissal.

On March 25, 1887, nearly twelve years after appellee claims she married appellant, an information was filed in the County Court of Travis County against Charles Cuneo, which charges: "That in the county of Travis, in the State of Texas, on or about the 3d day of March, 1887, one Charles Cuneo, an unmarried man, did then and there unlawfully live together and have carnal intercourse with Lena Garcia, an unmarried woman," etc. The undisputed evidence shows the defendant in that case to be the appellant in this, and the woman named

in the information to be the appellee.  Upon said charge Cuneo was, on April 22, 1887, tried before a jury, found guilty by their verdict, and his punishment assessed at a fine of $50.  A witness in the cause under consideration testified that he was one of the jurors in the criminal case, and that the appellee testified to appellant's illicit intercourse with her, and that the conviction was obtained solely on her testimony.  She stated in her testimony that she was a witness in that case against the defendant, and that she testified that they were living together as husband and wife.  We can not but here remark that if it was a fact, as she now says, she was then his wife, that was the time to "come out strong" and testify to it plainly and unequivocally, and not in such language as would evidence her husband's guilt and shame as well as her own.

Recurring now to the third and fourth objections urged by appellant to the charge of the court.  From the evidence recited, it is clear that from it the court was authorized in submitting to the jury the issue of a common-law marriage, as well as evidence from which the question as to whether such a marriage might be implied or presumed from the conduct of the parties.  We hold, therefore, the objections made to the charge can not be sustained.

When the admissions made in appellee's petition against Charles Cuneo by which she sued him for a breach of promise to marry her, and the proceedings in the prosecution against him for fornication with her are considered, we must say that the evidence strongly tends to show that, at the time of the commencement of the cohabitation and conduct from which it is sought to prove a marriage there was in fact no marriage, and that the connection between the parties was illicit in its origin. If it was illicit in its origin, the evidence strongly tends to show no change in its character.  And as a mere illicit intercourse, though extending over a long period, can never have the effect of validating or consummating a marriage dependent upon cohabitation to complete it, we do not think the evidence is sufficient to show marriage.  And for this reason the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*