HOGDEN CROSSETT v. THE STATE.

No. 7211. Decided October 3, 1923.

Rehearing denied March 26, 1924.

1.—Seduction—Evidence—Chastity.

The fact that the injured female resided with her parents, attended and took part in church and school affairs, and interested herself in society was properly received on the issue of her actual chastity. Following: Nolan v. State, 48 Texas Crim. Rep., 436, and other cases.

2.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions went no further than to state that an operation was performed on the injured female, no details are stated and the relevancy of the testimony is not made apparent, the same presents no error under the facts of the instant case.

3.—Same—Evidence—Bill of Exceptions—Withdrawing Evidence.

Where the bill of exceptions failed to reveal what took place at the places mentioned, to wit: the Hancock Hotel and Seaton Infirmary, the same was incomplete, but looking to the evidence it appears that appellant cohabited with the female injured at such places, and while this had already

been introduced in evidence it was not incumbent upon the court to withdraw the same.

**4.—Same—Argument of Counsel—Bill of Exceptions.**

Nothing in the bill of exceptions reveals the connection with which the arguments of counsel were made, and the court fails to comprehend in what respect they transcend the scope of legitimate argument to a degree that would justify a reversal.

**5.—Same—Common Law Marriage—Charge of Court.**

Upon trial of seduction, it was not incumbent upon the court under the evidence in the instant case to instruct the jury on the theory of a common law marriage, in order that it might bar the prosecution, and while it is not necessary to decide whether a common law marriage would obliterate the offense of seduction, it is sufficient to say that a common law marriage was not proved, and there was no error, therefore, in refusing to charge the jury to that effect.

**6.—Same—Rehearing—Practice on Appeal.**

Defendant's motion for rehearing has been carefully considered and is hereby overruled.

Appeal from the District Court of Lubbock. Tried below before the Honorable W. R. Spencer.

Appeal from a conviction of seduction; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*G. E. Lockhart,* and *McLean, Scott & Sayers,* for appellant.—On question or argument of counsel: Bearden v. State, 46 Texas Crim. Rep., 147; Davis v. State, 54 id., 249.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The offense is seduction; punishment fixed at confinement in the penitentiary for a period of five years.

The injured female was dead at the time of the trial. Appellant's theory, supported by his testimony, was that she yielded her virtue without the promise of marriage, and in much detail, he revealed instances of their associations both antecedent to and at the time the sexual relations began. This testimony would apparently invite an inquiry into the character of the injured party, and upon that issue her environments and the nature of her associations would seem to be a proper inquiry.

The fact that Rosa Stuart resided with her parents, that she attended and took part in church and school affairs, and interested herself in society was properly received on the issue of her actual chastity. Underhill on Crim. Ev., 3rd Ed., Sec. 592, p. 830; Ruling Case Law, Vol. 24, p. 776, Sec. 60; In re Vandiveer, 4 Cal. App.,

650, 88 Pac. 993; People v. Roderigas, 49 Cal., 9; Nolan v. State, 48 Texas Crim. Rep., 436; Mrous v. State, 31 Texas Crim. Rep., 597; Jeter v. State, 52 Texas Crim. Rep., 212; L. R. A., Vol. 14, (N. S.), p. 727, notes.

The fact the Rosa Stuart was pregnant was proved without objection. The bill complaining of proof that an operation was performed on her, does not reveal any surrounding circumstances, but assails the evidence on the ground that it offended against the rule forbidding the unnecessary introduction of details of collateral transactions. The bill goes no further than that an operation was performed; no details are stated. The relevancy of the testimony is not made apparent, nor its harmful effect perceived.

In another bill complaint is made of the refusal of the court to exclude from the jury the testimony of various witnesses touching the occurrences at the Hancock Hotel and Seton Infirmary "because the only purpose for which such testimony could have been admitted originally was for the purpose of proving circumstantially that the defendant had intercourse with the alleged injured party, Rosa Stuart, in that since the defendant took the stand and admitted such acts of intercourse, such circumstances have been superseded by the admissions of the defendant." The bill fails to reveal what took place at the places mentioned, and for that reason is incomplete. Looking to the evidence, however, it appears that appellant cohabited with the prosecutrix at the Hancock Hotel and occupied the same room with her and claimed that she was his wife, and the operation for abortion performed at the Seton Infirmary revealed the pregnancy of the girl. The admissibility of this testimony at the time it was received seems conceded, but it is contended that by reason of a subsequent statement of appellant in his testimony that he had caused the pregnancy, it was incumbent upon the court to withdraw the circumstantial evidence previously received tending to prove the same fact. The evidence being legitimately before the jury, no rule of law of which we are cognizant required its withdrawal because other evidence was introduced proving the same fact.

In several bills of exception complaint is made of the remarks of State's counsel in argument. One of them said to the jury: "If you believe the defendant's testimony, turn him loose. Then go home and try to face your wives and your virtuous children, if you have any."

Another referred to the fact that appellant had worn the uniform of the army and that upon coming home, he had disgraced and prostituted it. Appellant put in evidence the fact that he wore his uniform; that he was a soldier and that he had gone to the army.

Still another said of the injured female: "She lived for him, she gave herself to him, she made his defense for him, and then she died for him."

Nothing in the bills reveals the connections with which the arguments were made, and we fail to comprehend in what respects they transcend the scope of legitimate argument to a degree that would justify a reversal of the judgment. All of them appear to have been comments of the attorneys upon the facts in the record. Appellant's testimony showed that the devotion of the girl to him was unusual.

After the relations of Rosa Stuart and appellant had resulted in her pregnancy of several months' duration and after various efforts to bring about an abortion, in the course of which letters on the subject were exchanged by them, they went to a hotel in the City of Austin and were registered by the appellant as husband and wife. The keeper of the hotel was informed by appellant that they were married. They remained at the hotel for about a week, occupying the same room, and, according to his testimony, held themselves out as man and wife. During that time appellant was engaged in an unsuccessful effort to induce a physician to produce an abortion. Relative to what followed appellant, in his testimony said: ''I told her we had better marry and she said she didn't think that would do any good now, since she was that far along; she would be disgraced anyway, and she couldn't bear for anyone to know we had those relations before we were married. . . . I wanted to marry her at that time, as soon as I couldn't get anything done for her.''

According to his testimony, she suggested that she might be able to arrange for an abortion. Again quoting him, he said: ''Our plans were that later on if this could be avoided, if a child was not born, we would be married. We would thereafter get married as we had originally planned.''

Appellant contends that upon the evidence it was incumbent on the court to instruct the jury on the theory of common law marriage and complains of the refusal of a special charge embracing that view. The marriage of the parties would operate to bar the prosecution. Eledge v. State, 50 Texas Crim. Rep., 223; Vernon's Texas Crim. Stat., Vol. 1, p. 938, Art. 1449 and notes thereunder; Ruling Case Law, Vol. 24, p. 770, sec. 52. Whether a common law marriage would suffice to obliterate the offense of seduction, or in other words, whether a promise of marriage would be fulfilled by a common law marriage is, so far as we are aware, a novel question. Its answer does not seem necessary in the instant case for the reason that the evidence relied upon to establish a common law marriage does not fill the measure required by law. It seems obvious from the only testimony upon the subject that the relations they had formed and under which they were living during the week that they were at the hotel together was not by them contemplated or regarded as being in compliance with the previous agreement to marry, but simply an expediency pending the time when matters would so shape themselves as to render the marriage practicable. The marriage which

they had in mind obviously was not a common law marriage but a marriage celebrated in the manner contemplated by law. See R. S., Art. 4610. A common law marriage is one in which there is an agreement to become husband and wife immediately from the time of the giving of the mutual consent. In 18 R. C. L., p. 392, sec. 13, it is said: "As there can be no contract per verba de praesenti where the marital status is to become fixed in the future, it is not sufficient to agree to present cohabitation and a future regular marriage when more convenient, or when a wife dies, or when a ceremony can be performed."

See also Simon v. State, 31 Texas Crim. Rep., 202; Michie's Digest of Tex. Rep. (Civil Cases), Vol. 12, p. 184; Chapman v. Chapman, 88 Tex. Rep., 641; Ahlberg v. State, 88 Texas Crim. Rep., 173, 225 S. W. Rep., 253. A reasonable and to our mind a sound rule touching common law marriages is that the cohibitation between a man and woman illicit in its inception and so understoood by them is presumed to continue illicit until proof is made of a change to a matrimonial cohabitation. A matrimonial cohabitation is the living together of a man and woman ostensibly as husband and wife. "Cohabitation consists of a living or dwelling together in the same habitation as husband and wife and not merely sojourning, visiting or remaining together for a time. Sexual intimacy or illicit living together is not enough." See Lee v. State, 44 Texas Crim. Rep., 354; Cuneo v. De Cuneo, 59 S. W. Rep., 284 (Texas Case); Klipfel v. Klipfel, 124 Amer. State Rep., note, p. 113. Where the connection between the parties is shown to have been illicit in its origin, or criminal in its nature, the law raises from it no presumption of marriage. 2 Kent, 87; Greenleaf on Evidence, sec. 464; see Bishop on Marriage, Divorce and Separation, sec. 262.

In holding as a matter of law that there was nothing in the evidence which would warrant the jury in finding that appellant and Rosa Stuart became husband and wife, the learned judge who tried the case was, in our opinion, not in error.

Failing to discover in the record any legal ground for its reversal, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 26, 1924.

HAWKINS, Judge.—We have carefully examined appellant's motion for rehearing and his brief and argument filed in connection therewith. All the matters suggested were most carefully considered upon original submission because of the unusual features of the case. Our views as expressed in the former opinion remain unchanged.

Believing the case to have been correctly decided the motion for rehearing is overruled.

*Overruled.*