■ PHYLLIS J. VERNON, Respondent-Appellant, v. HAROLD VERNON, Appellant-Respondent.— Judgment, Supreme Court, New York County, entered on June 12, 1972, declaring that the parties were lawfully married, granting plaintiff separation and alimony and counsel fees, modified, on the law and the facts, only to the extent of reducing the award of alimony to $250 per week and, as so modified, is otherwise in all respects affirmed, without costs and without disbursements. Having regard to the length of time of this marriage, the ability of the wife to be self-supporting, the circumstances of the case and of the respective parties (Domestic Relations Law, § 236), we feel that the reduced award is fair and proper. If the facts and the Texas law were as stated by the dissent, we would agree that the appellant should prevail. But the dissenter has stated only his view of the record which is in direct conflict with the findings of fact and conclusions of law made by the learned and experienced Trial Justice in a scholarly opinion after a 10-day trial. The plaintiff wife, described by the trial court as a young college student and a lifelong resident of Texas, brought this separation action against the defendant husband described by the same court as a 42-year-old divorced, twice married, keen, successful, sophisticated multimillionaire businessman. The record furnishes ample support for the findings made, including the applicable Texas law. Furthermore, we agree with the Trial Justice that defendant should not now be permitted to attack the validity of his marriage to plaintiff on the ground that he lacked the necessary good faith to marry her because he knew that

his divorce from his second wife, Emily, was fraught with the infirmity of his concealed forgery, subornation of perjury and conspiracy to corrupt justice. Concur — Nunez, Kupferman, Tilzer, JJ.; Stevens, P. J., and Steuer, J., dissent in the following memorandum by Steuer, J.: While we agree with the majority to the extent that if plaintiff is entitled to any alimony the award made at Trial Term was grossly excessive and should be reduced, we do not believe that plaintiff is entitled to any alimony at all. Our conclusion is reached on the ground that the finding that the parties were married is erroneous. It is undisputed that the parties were cohabiting for some little time, during all or some of which plaintiff was clearly aware that defendant was a married man with five children. To appease plaintiff's parents, who objected to the relationship, various schemes to present a picture of a legal marriage were entered into. These included a trip to Mexico where a perfunctory divorce without notice to defendant's wife was obtained and a marriage ceremony performed. The utterly sham nature of these proceedings is pointed up by the fact that the illusory marriage ceremony was gone through before the palpably invalid divorce was obtained. Actually, plaintiff does not now rely on this marriage ceremony, or any ceremony, to legitimatize her status. After the ceremony the parties took up an open relationship, residing in homes in New York and in Florida. Shortly thereafter defendant's wife instituted and completed divorce proceedings, and it is the continuation of the relationship thereafter that is relied on to establish plaintiff's status as a wife. Concededly, neither New York nor Florida, the States in which the parties had residences and lived during this period of their cohabitation, recognizes common-law marriage. This fact did not obstruct plaintiff's endeavors. She claimed a common-law marriage by virtue of the law of Texas. True it is that when plaintiff first met defendant she was a resident and domiciliary of Texas, where she lived in her parents' house. The only connection with Texas had by either of the parties since defendant's former wife obtained her divorce was that the couple made some six short visits to the plaintiff's parents, during which they stayed at the latter's home occupying a room temporarily made available to them by plaintiff's brother. The Texas Family Code (§ 1.91) requires that the parties live together as man and wife in the State of Texas. It was substantially proved that this requirement is a codification of the common law of Texas. According to that common law the "living together" must be by residents of Texas, and domiciliaries of other States not married in their own State who happen to visit Texas do not acquire a marital status by the way they conduct themselves in Texas. It has long been held by the Texas courts that a sojourn in a jurisdiction crediting common-law marriages does not operate to marry the parties, and the Texas courts have refused to recognize as married, parties who, like this plaintiff rest on their claim of visits to such a jurisdiction (*Kelly* v. *Consolidated Underwriters*, 300 S.W. 981 [Tex.]). Futhermore, a common-law marriage is merely one in which the agreement of the parties is substituted for the formal ceremony. The agreement is often proved by the parties holding out that they are married. But this is only proof, and where no agreement exists holding out is not a substitute. Where a meretricious relationship, such as is presented here, is claimed to ripen into marriage by the removal of an impediment to marriage, it is essential that there be agreement to be married subsequent to removal of the impediment. And Texas assumes that the meretricious relationship continues until substantial proof of a change is introduced (*Cuneo* v. *De Cuneo*, 59 S.W. 284 [Tex. Civ. App.]). The proof here is woefully inadequate. To hold otherwise is an exercise in misplaced sympathy. Granted that defendant's sexual conduct is less than

admirable and that his resources are sufficient to allow his indulgences, this is no reason to strain the law or to provide an adventuress — albeit a very good looking one — with a life income.