**Opinion issued March 25, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-23-00374-CV**

_____

**ALDO MONTEMAYOR, Appellant**

**V.**

**LIZETH ARACELY MONTEMAYOR, Appellee**

---

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-83349**

---

**MEMORANDUM OPINION**

Aldo Montemayor and Lizeth Aracely Montemayor both filed petitions seeking a divorce and joint managing conservatorship over their two minor children. They signed a partial mediated settlement agreement ("MSA") relating to

conservatorship issues, but they were unable to reach an agreement on the property division. Following a bench trial, the trial court signed a final divorce decree dissolving the parties' marriage, memorializing the MSA with respect to child custody and possession, and dividing the parties' marital estate.

In six issues on appeal, Aldo contends that (1) by finding the parties were married on January 1, 2012, the trial court granted Lizeth relief for which she did not plead and improperly determined the parties had an informal marriage when no evidence supported such a finding; (2) the court denied Aldo relief based on the MSA; (3) the court erroneously denied Aldo's objections to Lizeth's documentary evidence, which she did not provide to him at least ten days before trial; (4) the court erroneously divided Aldo's separate property; (5) the court did not make a just and right division of the parties' community estate; and (6) the court's final divorce decree did not accurately reflect the MSA or the court's rendition.

We affirm the divorce decree in part, reverse in part, and remand for further proceedings.

## Background

Aldo and Lizeth have two children together: a daughter born in 2012 and a son born in 2019. The parties had a ceremonial marriage in January 2013. They dispute whether they were informally married before the date of their ceremonial marriage.

Aldo filed for divorce in December 2020. He alleged that he and Lizeth "married on or about January 31, 2013." Lizeth filed a counterpetition for divorce and alleged that "[t]he parties were married on or about January 1, 2012." Both parties requested that the trial court name them joint managing conservators of their two children.

During the pendency of the divorce proceeding, Aldo and Lizeth reached a partial mediated settlement agreement. In the MSA, the parties agreed that they shall be joint managing conservators of their children, and Lizeth would have the exclusive right to designate the children's primary residence. The parties agreed that Aldo would have an Expanded Possession Order, and he agreed to pay $1,200 per month in child support and $50 per month in cash medical support. The parties also agreed that Aldo shall be adjudicated as the father of their daughter, who was born prior to their ceremonial marriage. The parties further agreed "to exchange documents per the Local Rules" and that "[n]either party may object to the exchange of documents ten days before trial." The parties requested "that the Court decide property and liability issues at final trial."

Both Aldo and Lizeth filed inventories and appraisements before trial. Aldo also filed proposed property divisions. The parties had three assets that became the focus of trial: the marital residence in Baytown, a piece of real property located in Mexico, and Aldo's trucking company, including a semi-truck. Aldo and Lizeth

disagreed about the characterization of these pieces of property and the value of the Baytown house.

The trial court held a bench trial over two days in June 2022 and October 2022. At the start of trial, the trial court admitted several exhibits, including the MSA, Aldo's second amended inventory and appraisement, Aldo's second amended proposed property division, and the deed to the Baytown house. During opening, Aldo's counsel stated that although the evidence would show that Aldo purchased the Baytown house before the parties married, he was not requesting possession of the house but was instead asking that the trial court grant him "his fair share of the net equity in the home."

During Lizeth's opening, her counsel stated that he did not believe there was "any dispute the [Baytown] home is community property" because "[t]he deed itself says it is" and it "deed[ed] the property to the husband and wife." Lizeth's counsel also disputed Aldo's characterization of the Mexico property and the trucking business as Aldo's separate property. Counsel further contended that the parties had an informal marriage "going back to, at least, 2012." Aldo's counsel objected, stating that she did not believe Lizeth had "a pleading requesting the adjudication of a common law marriage." The trial court did not immediately address this issue.

Aldo testified that the parties married on January 31, 2013. Their daughter, who was born in April 2012, was born before the marriage. He stated that her birth

4

certificate listed him as her father, he signed an acknowledgement of paternity, and he requested that the trial court formally adjudicate his paternity.

With respect to the Baytown house, Aldo testified that he entered into an owner-to-owner financing agreement with the previous property owner, and he began making payments on that house in February 2011. He made a $3,500 down payment and began paying $900 per month. He acknowledged that he did not have documentary evidence of this agreement. At the time he began making payments, Aldo lived with a roommate, not Lizeth. Aldo estimated that Lizeth moved into the property around April or May 2011, but they were not married at the time she moved in. Aldo paid off the Baytown house around September 2017.

Aldo testified that the deed to the Baytown house included both his and Lizeth's names. He could not recall when he placed her name on the deed, but he stated that "whenever we did the deed, that's when she moved in." The deed reflected that the grantors executed it on August 3, 2012. The deed stated that the grantors, in consideration for the execution of a $47,000 promissory note, conveyed the property to "Aldo Montemayor and wife, Lizeth [Aracely] Lopez." Aldo wanted Lizeth and the children to continue living in the Baytown house, but he requested

5

that the trial court award him "half of the equity of the house," or approximately $90,000.[1]

During Aldo's testimony, the parties returned to the topic of whether Lizeth's pleadings raised the issue of an informal marriage. Aldo's counsel stated that she had reviewed the pleadings, but she did not see a request by Lizeth to adjudicate an informal marriage. Lizeth's counsel responded that Lizeth was not required to specifically plead for such an adjudication. Instead, her pleading alleged a date of marriage of January 1, 2012, and if Aldo had a complaint about the specificity of the pleading, he should have raised that complaint before trial through special exceptions. After further discussion, the trial court ruled that Lizeth was not required to specifically plead for adjudication of an informal marriage in her counterpetition.

Aldo could not recall whether he and Lizeth filed their federal income taxes together in 2012. Aldo acknowledged that the deed to the Baytown house—which was recorded in the Harris County property records on August 6, 2012—stated that the grantors conveyed the property "unto Aldo Montemayor and wife, Lizeth [Aracely] Lopez." He further agreed that he and Lizeth lived together in 2012, and he "would hold Lizeth out to be [his] wife in 2012."

---

[1] Aldo later requested that if Lizeth decided to sell the Baytown house, the court order her to pay a share of the equity to Aldo "immediately." If not, then the court should order the sale and payment after their youngest child turns eighteen.

With respect to Aldo's trucking business, he testified that he started that business around 2009 or 2010, before the parties' marriage. He obtained an EIN number, but he did not incorporate a business or form another kind of business entity. He did not file a separate tax return for his business. He purchased the semi-truck that he currently used in 2017, during the marriage, but he sold a truck that he had owned prior to marriage to make this purchase. He requested that the court order that the trucking business is his separate property.

Aldo also claimed that the court should determine that the real property located in Mexico was his separate property. Originally, when this property was purchased in 2016 or 2017, only Lizeth's name was on the deed. However, after Aldo filed for divorce, Lizeth purportedly signed a deed transferring 100% of her ownership interest in the Mexico property to Aldo. Aldo agreed with his counsel that when Lizeth signed the deed, they had an agreement that the Mexico property would become his separate property. However, he also agreed with Lizeth's counsel that he had no evidence that Lizeth signed an agreement converting the Mexico property from community property to Aldo's separate property. The trial court did not admit

into evidence any deeds or other documents concerning this property.[2] Lizeth proposed that the trial court award this property to Aldo.[3]

Lizeth testified that she had lived at the Baytown house since March 2011. When asked how long she and Aldo had been married, she stated, "Since 2012 is when we really started claiming marriage, but we got married with a certificate in [20]13." She agreed with her counsel that she and Aldo held "each other out as husband and wife" prior to obtaining a marriage certificate. She testified that she and Aldo filed their taxes in 2012 as "married filing jointly." The trial court sustained Aldo's objection to the parties' 2012 tax return and did not admit this exhibit.

On January 3, 2023, approximately three months after trial concluded, the trial court made a written rendition. The court approved and rendered judgment on the MSA. The court also granted the parties a divorce based on insupportability. With respect to the property division, the court awarded Aldo 100% of his trucking business and 100% of the Mexico property. The court awarded Lizeth 100% of the Baytown house.

---

[2]     At trial, Lizeth's counsel represented that he only had a Spanish version of the deed from Lizeth to Aldo. Aldo attached a document that purported to be an English translation of this deed to his "First Amended Objection to Entry of [Lizeth's] Proposed Final Order and Request for Clarification of Judge's Rendition."

[3]     When asked whether she had signed a deed giving her ownership interest in the Mexico property to Aldo, Lizeth stated, "That is not what I was told was being signed; so, no, not to that wording that you are telling me." Lizeth refused to answer other questions relating to the deed she purportedly signed.

Lizeth filed a proposed divorce decree that, among other things, stated the date of the parties' marriage as January 1, 2012. Aldo objected to entry of this proposed decree and requested clarification of the trial court's rendition. Aldo argued that the rendition was not consistent with the relief requested by the parties, their proposed property divisions, their sworn inventories and appraisements, and the evidence presented at trial.

In an amended filing, Aldo raised additional objections to Lizeth's proposed decree. He objected that the proposed decree granted Lizeth relief for which she did not plead, specifically, an adjudication of an informal marriage. He further argued that no trial evidence established all three statutory elements to prove an informal marriage.

In the final divorce decree, the court found that Aldo and Lizeth "were married on or about January 1, 2012," and the court dissolved their marriage on grounds of insupportability. The court adjudicated Aldo as the father of the parties' daughter, appointed both parents as joint managing conservators of the children, and followed the MSA with respect to the parents' rights and duties, possession of and access to the children, and child support.

The trial court also divided the parties' marital estate. The court awarded assets to Aldo including the Mexico property, bank accounts in Aldo's sole name, 50% of the balance of accounts in both his and Lizeth's names, 100% of all

retirement accounts in his name, 100% of his trucking business, the semi-truck used in his trucking business, and three other vehicles. The court awarded Lizeth the Baytown house, bank accounts in her sole name, 50% of the balance of accounts in both her and Aldo's names, 100% of all retirement accounts in her name, and a vehicle. The court ordered both parties to pay 50% of the outstanding balance on thirteen different credit card accounts. The court did not order Lizeth to pay a portion of the equity in the Baytown house to Aldo.

Aldo requested that the trial court file findings of fact and conclusions of law, and when the court did not file findings and conclusions, he filed a notice of past due findings and conclusions. Aldo also moved for a new trial. This motion was overruled by operation of law. This appeal followed.

## Pleading and Proof of Informal Marriage

In his first issue, Aldo contends that by finding that the parties married on January 1, 2012, the trial court granted Lizeth relief for which she did not plead because Lizeth did not specifically plead that the parties were informally married on January 1, 2012. He further argues in this issue that Lizeth presented no evidence of all three statutory elements required to establish an informal marriage.

### A. Standard of Review

The existence of an informal marriage is a fact question, and the party seeking to establish existence of the marriage bears the burden of proving three statutory

10

elements by a preponderance of the evidence. *Small v. McMaster*, 352 S.W.3d 280, 282–83 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Nguyen v. Nguyen*, 355 S.W.3d 82, 88 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

A finding that an informal marriage exists is subject to legal and factual sufficiency review on appeal. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). When conducting a legal sufficiency review, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Nguyen*, 355 S.W.3d at 88 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005), and *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). We consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support it. *Id.* (citing *City of Keller*, 168 S.W.3d at 822). We will sustain a no-evidence contention only if (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* (citing *City of Keller*, 168 S.W.3d at 810).

When conducting a factual sufficiency review of a finding on which the appellant did not have the burden of proof, we consider and weigh all the evidence

11

and set aside the judgment only if the evidence supporting the challenged finding is so weak as to make the judgment clearly wrong and manifestly unjust. *Id.* In a bench trial, the trial court is the factfinder and the sole judge of the credibility of witnesses. *Id.* The factfinder may choose to believe one witness over another, and we "may not impose [our] own opinion to the contrary." *Id.* (quoting *Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.)).

## B.      Pleading and Proof Requirements for Informal Marriage

The trial court's judgment "shall conform to the pleadings" and to "the nature of the case proved." TEX. R. CIV. P. 301. A party may not be granted relief in the absence of pleadings to support that relief. *Phillips v. Phillips*, 296 S.W.3d 656, 670 (Tex. App.—El Paso 2009, pet. denied); *see Salomon v. Lesay*, 369 S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.). A judgment not supported by the pleadings is erroneous. *Lynch v. Lynch*, 540 S.W.3d 107, 135 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). A prayer for general relief supports any relief raised by the evidence and consistent with the allegations in the petition. *Benavides v. Alexander*, 646 S.W.3d 14, 20 (Tex. App.—San Antonio 2021, pet. denied); *Salomon*, 369 S.W.3d at 553.

Pleadings must give fair notice of the nature of the case and the basic issues so that the opposing party can prepare a defense. *Bos v. Smith*, 556 S.W.3d 293, 305–06 (Tex. 2018); *Lynch*, 540 S.W.3d at 134–35 ("A pleading provides 'fair notice'

12

when the opposing party can ascertain from the pleading the nature of the claims, the basic issues in controversy, and what testimony will be relevant to the claims."). The purpose of a pleading is to "define the issues at trial." *Livingston v. Livingston*, 537 S.W.3d 578, 588 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (quoting *King v. Lyons*, 457 S.W.3d 122, 126 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). When no special exceptions are made to the pleadings, we liberally construe the pleadings in the pleader's favor. *Bos*, 556 S.W.3d at 306. To determine whether a party pleaded a particular claim, we must "find those pleadings adequate to state, 'with reasonable certainty' and without reference to information from another source, 'the relief sought with sufficient information upon which to base a judgment.'" *In re P.M.G.*, 405 S.W.3d 406, 417 (Tex. App.—Texarkana 2013, no pet.) (quoting *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979)); *see Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (stating that if we cannot reasonably infer that petition contains given claim, we must conclude petition does not contain claim).

A party who seeks to establish an informal marriage in Texas must prove three elements: (1) the couple agreed to be married; (2) after the agreement, they lived together in Texas as spouses; and (3) they represented to others in Texas that they were married. TEX. FAM. CODE § 2.401(a)(2); *Nguyen*, 355 S.W.3d at 88. An informal marriage does not exist until the concurrence of all three elements. *Nguyen*,

355 S.W.3d at 88 (quoting *Eris v. Phares*, 39 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).

To establish an agreement to be married, the evidence must show that the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife. *Eris*, 39 S.W.3d at 714. The testimony of one of the parties to the marriage constitutes some direct evidence that the parties agreed to be married. *Small*, 352 S.W.3d at 283. A party can also establish an agreement to be married by circumstantial evidence or the conduct of the parties. *Russell*, 865 S.W.2d at 933. Proof that the parties cohabitated and represented to others that they were married "may constitute circumstantial evidence of an agreement to be married." *Id.*; *Burden v. Burden*, 420 S.W.3d 305, 308 (Tex. App.—Texarkana 2013, no pet.) (stating that agreement to be married cannot be inferred "from the mere evidence of cohabitation and representations of marriage to others," but such evidence may be circumstantial evidence of agreement). "However, the circumstances of each case must be determined based upon its own facts." *Russell*, 865 S.W.2d at 933.

The statutory requirement that the parties "represented to others" that they were spouses is synonymous with the judicial requirement of "holding out to the public." *Eris*, 39 S.W.3d at 714–15. This element can be satisfied by evidence of the parties' conduct and actions. *Id.* at 715. Occasional introductions as spouses are not

sufficient to establish this element. *Small*, 352 S.W.3d at 285. A couple's reputation in the community as married is a "significant factor" in establishing the holding out element. *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.) (quotations omitted). "Proving a reputation for being married requires evidence that the couple consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married." *Small*, 352 S.W.3d at 285 (quotations omitted).

## C. Whether the Pleadings and Proof at Trial Support the Trial Court's Finding that the Parties Married on January 1, 2012

Aldo argues that the trial court erred by finding in the final divorce decree that the parties "were married on or about January 1, 2012." He first argues that by making this finding, the court granted Lizeth relief that was not supported by the pleadings because neither party specifically requested in their pleadings that the court adjudicate an informal marriage. He further argues that no evidence presented at trial established the three statutory elements of informal marriage as of January 1, 2012.

Whether a party must specifically plead the type of marriage that has occurred—for instance, an informal marriage as opposed to a ceremonial marriage— is an issue that Texas courts have rarely addressed. More than a century ago, the San Antonio Court of Civil Appeals considered a complaint that the trial court should not have allowed evidence of an informal marriage at trial because although the

15

petitioner had alleged a marriage in her divorce petition, she had not alleged an *informal* marriage. *See Cuneo v. De Cuneo*, 59 S.W. 284, 284 (Tex. App.—San Antonio 1900, no writ). In concluding that the petitioner's allegations were sufficient, the court noted that the parties had cited "no authority holding that in a suit for a divorce it is essential for the pleader to allege the facts constituting a marriage of any kind." *Id.* Rather, "[t]he general rule is that a party is not required to plead his evidence." *Id.*; *cf.* TEX. FAM. CODE § 6.402(a) ("A petition in a suit for dissolution of a marriage is sufficient without the necessity of specifying the underlying evidentiary facts if the petition alleges the grounds relied on substantially in the language of the statute.").

Marriage is a "clearly defined" word with a "well known" meaning, and "when the relation is alleged to exist between parties each knows the facts necessary to constitute it must be proven." *Cueno*, 59 S.W. at 284. Thus, "whatever evidence was pertinent to the issue, whether it tended to show a marriage valid at common law or by statute, was admissible under the pleadings." *Id.*; *see Harlan v. Harlan*, 125 S.W. 950, 952 (Tex. App.—Austin 1910, no writ) ("It is said, in *Cuneo v. De Cuneo* . . . that a petition merely alleging that the parties were married admits of proof of a common-law marriage.").

More recently, the Fourteenth Court of Appeals addressed whether a petitioner was required to allege in her divorce petition that a specific type of

16

marriage had occurred under the laws of a foreign jurisdiction. *See Adeleye v. Driscal*, 544 S.W.3d 467, 483–85 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In *Adeleye*, the petitioner alleged that the parties had married on or about May 18, 1984, in Nigeria, but she did not allege that this marriage "was a customary law by proxy marriage." *Id.* at 484. The divorce decree recited that "the parties were married in NIGERIA, on MAY 18, 1984." *Id.* The Fourteenth Court rejected Adeleye's contention that because the petition did not specifically allege a proxy marriage under Nigerian law, the judgment did not conform to the pleadings. *Id.* at 484–85. The petitioner "pleaded a marriage took place in Nigeria on a certain date and the judgment held that the alleged marriage was valid." *Id.* at 484. The court noted that Adeleye had not cited any authority holding that Rule 301 requires a divorce petitioner to allege that a specific type of marriage ceremony had occurred, and it declined to impose such a requirement. *Id.* at 484–85.

In his petition for divorce, Aldo alleged that the parties "married on or about January 31, 2013." Lizeth, in her counterpetition for divorce, alleged that the parties "were married on or about January 1, 2012." Aldo did not file special exceptions to Lizeth's counterpetition. At trial, Lizeth sought to establish that the parties had entered into an informal marriage prior to the ceremonial marriage that occurred in January 2013. Aldo objected, arguing that Lizeth had not pleaded existence of an informal marriage, and therefore she should not be allowed to argue that an informal

17

marriage had occurred or elicit evidence on that matter. Following a discussion with the parties' counsel, the trial court determined that Lizeth was not required to specifically plead for an adjudication of an informal marriage. Ultimately, the trial court found in the final divorce decree that the parties "were married on or about January 1, 2012," the date corresponding to the allegation in Lizeth's counterpetition.

Aldo has cited no authority holding that a party must, in her divorce petition, specifically plead that the alleged marriage was an informal marriage, and we have found no such authority. Like our sister courts in *Cueno* and *Adeleye*, we decline to impose such a requirement. Lizeth pleaded that the parties married "on or about January 1, 2012." The trial court found in the divorce decree that Aldo and Lizeth "were married on or about January 1, 2012." We conclude that the court's divorce decree conforms to the pleadings and does not grant more relief than was requested. *See* TEX. R. CIV. P. 301. We now turn to the second portion of Aldo's first issue and consider whether the evidence at trial supports the trial court's finding that the parties married "on or about January 1, 2012."

Aldo testified that the parties had a ceremonial marriage on January 31, 2013. Lizeth did not challenge this date for their ceremonial marriage; instead, she contended that the parties had informally married prior to this date.

18

Aldo and Lizeth agreed that they began cohabitating in 2011. Aldo testified that he made a down payment and began making monthly payments on the Baytown house in February 2011. At the time, Aldo was living with a roommate and not Lizeth. He testified that Lizeth moved in around April or May 2011, and they were not married at that time. Lizeth testified that she began living in the Baytown house in March 2011.

When Lizeth's counsel asked her how long she had been married to Aldo, Lizeth responded, "Since 2012 is when we really started claiming marriage, but we got married with a certificate in [20]13." She agreed with her counsel that prior to "getting the marriage certificate," she and Aldo held "each other out as husband and wife." Lizeth also testified that she and Aldo filed their 2012 federal income taxes together, and they did so as "married filing jointly."

Aldo could not recall whether he and Lizeth filed their taxes together for the 2012 tax year. He agreed that he was present for the birth of their daughter in April 2012 and that he signed an acknowledgment of paternity at that time.

The trial court admitted a deed, executed on August 3, 2012, for the Baytown house. In the deed, the grantors agreed to "GRANT, SELL AND CONVEY unto ALDO MONTEMAYOR and wife LIZETH [ARACELY] LOPEZ" the Baytown house in exchange for a promissory note worth approximately $47,000. Lizeth's counsel questioned Aldo about this deed on cross-examination:

Q. And so, sir, you accepted this property deeding it to you and Aracely—or excuse me, Lizeth, as your wife, correct?

A. Uh-huh.

Q. Okay. And that's in 2012 when you guys were living together?

A. Yes.

Q. Okay. So, would it be fair to say that you—you would hold Lizeth out to be your wife in 2012?

A. What was that?

Q. You would hold Lizeth out to be your wife—

A. Yes.

Q. —in 2012?

A. Yes.

This is the only testimony in the record relevant to the three statutory elements of an informal marriage.

The trial court found that Aldo and Lizeth had married "on or about January 1, 2012." An informal marriage does not exist until the concurrence of all three statutory elements. *Nguyen*, 355 S.W.3d at 88; *see* TEX. FAM. CODE § 2.401(a)(2). Although the parties agreed that they began living together in the Baytown house sometime in spring 2011, there is no evidence in the record that Aldo and Lizeth had agreed to be married by January 1, 2012, or that they had represented to others that they were married by that date. Instead, Lizeth testified that "[s]ince 2012 is when [they] really started claiming marriage," and she agreed that "prior to . . . getting the marriage certificate," which occurred in January 2013, she and Aldo held each other

20

out as spouses. Aldo agreed that the August 3, 2012 deed listed Lizeth as his wife and that he would hold Lizeth out as his wife "in 2012."

Testimony that the parties "[s]ince 2012 . . . really started claiming marriage" and held each other out as spouses "in 2012" or "prior to . . . getting the marriage certificate" in 2013 is not evidence that the parties agreed to be married and represented to others that they were married on January 1, 2012. The parties' conclusory testimony does not establish the concurrence of all three elements of an informal marriage as of January 1, 2012, the date of marriage found by the trial court. *See Nguyen*, 355 S.W.3d at 88 ("An informal marriage does not exist 'until the concurrence of all three elements.'") (quoting *Eris*, 39 S.W.3d at 713). We therefore conclude that legally and factually sufficient evidence does not support the trial court's finding that Aldo and Lizeth married "on or about January 1, 2012."[4]

We sustain Aldo's first issue in part.

Because we hold that the trial court erred in concluding the parties married "on or about January 1, 2012," we remand the portion of the divorce decree dividing

---

[4]   We do not suggest that to establish an informal marriage, parties are required in every case to present evidence of specific dates corresponding to when they began cohabitating, when they agreed to be married, and when they represented to others that they were married. We merely hold that in this case, the parties' testimony that they started claiming marriage "since 2012" and they held each other out as spouses "in 2012" is too general to support the trial court's finding that the parties married "on or about January 1, 2012." And here, the date of informal marriage matters because it potentially impacts the characterization of the Baytown house—the parties' most valuable asset which was deeded to them in August 2012—as either community property or separate property.

the parties' marital estate for a new property division. Given our disposition, we need not address Aldo's remaining issues on appeal, including whether the trial court erroneously divided Aldo's separate property, whether the trial court made a just and right division of the parties' community estate, and whether the court's final divorce decree failed to accurately reflect the MSA or the court's rendition.

## Conclusion

We affirm the portion of the trial court's final divorce decree that dissolves the marriage between Aldo and Lizeth based on insupportability and all portions of the decree relating to conservatorship, possession and access, and child support for the parties' children. We reverse the portion of the divorce decree that finds that Aldo and Lizeth married "on or about January 1, 2012," and we remand the portion of the decree dividing the parties' marital estate for a new property division.

David Gunn
Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.