JONES *v.* STATE.

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

W.·J. Troutt, of Chattanooga, for plaintiff in error.

Ernest F. Smith, Assistant Attorney-General, for the State.

Mr. Justice Chambliss delivered the opinion of the Court.

The indictment in this case charged violation of Code, section 11180, in two counts, (1) bigamy and (2) continuing to cohabit with a second wife while legally married to a former wife. Conviction was had under the second count with a prison sentence of ten years.

It appears that this young man was married in 1936 in Miami, Florida, to Dorris Noreen Bristow. In the fall or winter of 1940 they separated. The wife sought a divorce. In November of that year, she engaged an attorney, Gene Hunter, Coral Gables, Florida, whose standing seems to be conceded, to act for her. He prepared a bill charging desertion, which was signed and sworn to by Mrs. Jones. On December 1st, the defendant met with Mr. Hunter, Mrs. Jones and a Mr. Bowman at Mrs. Jones' home in Miami, and there and then the defendant signed a formal answer prepared by Mr. Hunter in order, as Mr. Hunter explains, to facilitate the disposition of the cause. He testifies that he gave the defendant a copy of this answer and advised him that the divorce would be decreed in January or February, that the usual time required "is three to four weeks." However, on the 2nd day following, and before he had opportunity to file the papers, Mr. Hunter testifies he was stricken with influenza, which went into pneumonia and serious lung trouble, and he was in a hospital until July, 1941. Meanwhile, he returned the cash deposited with him and advised employment of another lawyer.

Thus it is that the divorce decree was delayed and not entered until May 9th, 1941.

Meanwhile, defendant appears to have left Miami after signing his answer, etc., and on March 22nd, 1941, nearly four months later, married Margie Cox and they took up their residence in Rossville, Georgia, where they continued to reside until late in that year, when they located

and resided for some time on Pine Street in Chattanooga, Tennessee, until they separated, being later divorced. This young woman is the prosecutor in this case, this indictment not being found until at the October term, 1943.

On the trial she first testified, as above recited, her testimony showing no cohabitation in this State. But being later recalled to the stand, supplementing her testimony, she was asked and answered as follows:

"Q. Now, Miss Cox, when you and the defendant Marvin Jones were married, where did you spend the week-ends? A. In a Tourist Camp in Chattanooga, Signal View.

"Q. How often did you do that? A. Spent the week-ends there, spent the week-ends in a tourist camp.

"Q. As a man and wife? A. As man and wife.

"Q. Over what period of time? A. From March 22nd to May 8th.

"Q. What year was that? A. 1941, after we married.

"Q. The same year you married? A. Yes, sir."

This is all the testimony in any way evidencing a violation of the second provision of the statute prohibiting continued cohabitation in this State on which the prosecution rests.

A number of errors are assigned questioning the technical sufficiency of proof as to the respective marriages, etc., which we do not find to have substance. Complaint is also directed to the fixing in the indictment of "May 1st, 1943," as the date of the offense, an obvious error. But, waiving this, we consider two grounds of reversal chiefly relied on.

■ It is insisted, in the first place, that when defendant married Margie Cox March 22nd, 1941, he acted on a good faith belief, reasonably founded, that a divorce had been obtained in Miami, as a result of the proceedings

inaugurated in the previous year, as above detailed, and that this defendant's apparent belief was not "rested on rumor," or mere unverified "report," as in the case of *White* v. *State*, 157 Tenn. 446, 9 S. W. (2d) 702.

But this Court has never adopted the rule, upon which the authorities are divided, that conceded good faith, an honest, but mistaken belief that a former spouse is dead or divorced, will protect one who contracts a second marriage under such belief, the parties not having lived apart and without knowledge of each other for the statutory time of five years prescribed by Code, section 11181. *White* v. *State, supra.*

The opinion in that case calls attention to the fact that the trial Judge gave the defendant the benefit of his "honest belief" defense, but, while not expressly passing on the question, the opinion cites our five year absence statute, Code, section 11181, and also notes that the decided weight of authority in this country enforces the statutory period of separation, despite honest belief. In the *White Case* the Court found no sufficient showing of diligence or of grounds for "honest belief," holding that even on this theory the defendant was not entitled to relief.

While of opinion that the defendant in the instant case presented a much stronger showing of grounds for an honest belief that his first wife had procured a divorce, than did White, we are not prepared to say that the facts demand an application of this rule of "honest belief", without a showing of compliance with the statutory time period of five years.

However, we are of opinion that a reversal should be adjudged on another ground mentioned above. The statute, Code, section 11180, charged to have been violated, reads:

"Bigamy.—If any person, being married, shall marry another person, the former husband or wife then living, or continue to cohabit with such second husband or wife in this state, such person shall be imprisoned in the penitentiary not less than two nor more than twenty-one years."

The pertinent language is, "or *continue to cohabit* with such second husband or wife in this state." We italicise the words "continue to cohabit"—As Judge CARUTHERS did in quoting this statute in *Finney* v. *State*, 40 Tenn. 544, 545. We thus stress, as we think the framers of the law intended to do, the element of continuity, as distinguished from the occasional or incidental.

Independent of the use of the word continue, the word cohabit, standing alone, connotes a fixed, rather than a transient, condition. The term "cohabit," says 14 C. J. S., Cohabit, p. 1311, "imports a dwelling together for some period of time, and does not include mere visits or journeys," citing *In re Miller's Estate*, 182 Okl. 534, 78 P. (2d) 819, 827; *Turney* v. *State*, 60 Ark. 259, 260, 29 S. W. 893; *Jackson* v. *State*, 116 Ind. 464, 465, 19 N. E. 330; *Calef* v. *Calef*, 54 Me. 365, 366, 92 Am. Dec. 549.; and 11 C. J. 951, and notes.

But, as above noted, the question of statutory intention in this regard is freed from all doubt by the use of the word "continue," so that the proof must show, not only a cohabitation, that is, a living or abiding together as man and wife in a fixed location, as distinguished from a mere occasional contact, or temporary association, however sexually intimate, but the express language of the statute requires that the cohabitation must be of the continuing and not the transitory type.

Now the testimony we have quoted, which is all in the record on this subject, certainly does not bring

the case within this meaning of the statute. The proof is definite that the fixed residence of the couple during the period from March 22nd, when they married, to May 9th, when the first wife's divorce decree was entered, was at 601 Chickamauga Avenue, Rossville, Georgia; that during this time they made trips, or visits, to Signal View Tourist Camp, in Tennessee, several times on week ends and there had marital relations, does not bring the case within the terms or intent of the statute.

◼ We think it apparent that the original and underlying object of this particular provision of the bigamy law was to prevent parties from entering into a bigamous marriage in another State than this, and then coming into this State to live in this bigamous status, beyond the jurisdiction and power of punishment of the State where the offense of bigamy had been committed. This appears to have been substantially the view of CARUTHERS, J., as expressed in the early case of *Finney* v. *State, supra*, 40 Tenn. page 546, where he said: "This new offence was created to prevent the scandal and evil examples of permitting men and women to cohabit in any community of this State, upon an unlawful second marriage, when the first, as well as the last, or either, may have taken place in any other State or county."

◼ In this connection we note the failure of the trial Judge to call this theory of the defense to the attention of the jury. After quoting the section of the Code involved, the Court charged as follows:

"There are two crimes there in that section of the Code, one is the offense of bigamy and the other is unlawful cohabitation and this second count is a charge against this defendant of unlawful cohabitation in this State after having contracted a prior marriage, without procuring a divorce from the first marriage. Rather having con-

tracted a second marriage, without procuring a divorce from the first marriage.''

It will be observed that the learned trial Judge says, and repeats, that the charge against the defendant is ''unlawful cohabitation,'' etc. He nowhere employs the language of the statute, ''shall . . . continue to cohabit . . . in this State.'' The defendant was thus deprived of the benefit of the important qualifying term ''continue'' in the instruction to the jury.

Further, in stating the theory of the defendant, no reference is made to this question of whether or not the proof showed a continuing cohabitation in this State. We think the jury should have been explicitly charged on this issue of continuing cohabitation, as against the temporary and occasional.

We appear to have no reported case prescribing the course of conduct which will bring the bigamous offender within the coverage of this statute and subject him to its penalties, but we are satisfied that its language limits its application as we have above indicated.

Reversed and remanded.