Moody *v.* T. H. Hays & Sons, Inc. *et. al.*

(*Nashville,* December Term, 1949.)

Opinion filed February 10, 1950.

HAROLD R. RATCLIFF and WILBURT J. CHIAPELLA, of Memphis, for appellant.

WINCHESTER & BEARMAN, of Memphis, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is a suit by Savannah Moody to recover compensation under the Workmen's Compensation Law, Code, Section 6851 et seq., for herself and two dependent children, arising from the accidental death of her husband. The

petition alleged that she was lawfully married to Earl Moody, deceased, and was his lawful wife at the time of his death, which arose out of and in the course of his employment, and that the children named in said petition were also dependents and entitled to receive compensation.

The joint answer of the defendants, T. H. Hays & Sons, Inc., as employer, and its insurance carrier, admitted that the death of the employee "was the result of an accident arising out of and occurring in the course of his employment". But defendants deny that petitioner is entitled to compensation for the following reasons:

"1. Petitioner was not the legal and lawful widow of Earl Moody;

"2. But if the Court should determine that petitioner is the legal wife and lawful widow of Earl Moody, respondents aver that she is not entitled to compensation because petitioner was voluntarily separated from her husband and has been living apart from him for a period of several years.

"The defendants neither admit nor deny that Earl Moody, deceased, had two minor children, or that they were dependent upon him at the time of his death, but if their interests are to be in any wise affected, the defendants demand strict proof thereof."

The record discloses without contradiction that Earl Moody and Savannah Riley (Moody) went through a marriage ceremony on July 24, 1930. The ceremony was performed by a Minister of the Gospel, one A. L. Daniels, upon a license issued at Marion, Arkansas. Prior to this marriage Savannah Riley was married to one Will Hudson. This was on January 6, 1919. They lived together until the early spring of 1923, he leaving her about three

months before the birth of a child of said marriage. According to the record, and not disputed, Savannah contracted a marriage with the deceased, Earl Moody, approximately seven years after she was deserted by her first husband.

In addition to the foregoing undisputed facts the trial judge found as follows: Following the separation of Savannah and Will Hudson "she made no effort to find her husband, nor did she divorce him. It appears that Earl Moody knew of this prior marriage."

There is material evidence to sustain the finding of the trial judge that the petitioner made no effort to learn if her former husband was dead or had obtained a divorce. The petitioner, testifying in her own behalf, stated, "that from the time Will Hudson left until the 24th of July, 1930, she heard nothing at all about him".

"Q. In all those years did you hear one word from Will Hudson? A. No, I didn't.

"Q. Did you know whether he was dead or alive? A. No, I didn't.

"Q. Did you assume he was dead? A. I did. I didn't ask. I didn't try to find out. I didn't know.

"Q. And then in 1930 you married Earl Moody? A. That is true."

There is no denial of the fact that the neighbors and acquaintances of Savannah and Earl Moody regarded their marital relationship as lawful. Until their separation they held themselves out to the public as man and wife.

The conclusion of the trial judge, based upon the foregoing testimony, is as follows:

"This Court is of the opinion that the petitioner is not the legal widow of Earl Moody, nor should she be so

considered for the purpose of the Workmen's Compensation Act, but further if the facts warranted a holding that the marriage was one that should be recognized for compensation purposes, through the doctrine of estoppel, she, the petitioner, was voluntarily living apart from the employee at the time of his death.''

He disallowed the petitioner compensation, for the reasons stated, except in the amount of $100.00 as a refund for burial expenses. The petitioner and deceased had three children. The oldest was married and of course was not a dependent. A partial award was made in favor of the second child, Earl Moody, Jr., because he was partially dependent, and nothing was allowed the youngest child, Johnnie, because she was illegitimate and was not a dependent. The petitioner excepted to the ruling of the court and appealed.

The assignments of error complain of the findings of the trial court (1) that the petitioner ''is not the legal widow of Earl Moody'', their marriage being ''lawful and valid''; (2) that it was error to hold that Savannah Moody ''was voluntarily living apart from Earl Moody at the time of his death''; (3) ''The court erred in holding and finding that the minor daughter of the deceased, Johnnie Moody, age 14, is illegitimate and that no compensation is recoverable on her behalf.'' (4) ''The court erred in holding and finding that Earl Moody, Jr., was only 50% dependent upon his deceased father.''

The evidence which relates to the fourth assignment of error fails to sustain the finding of the trial judge that petitioner was voluntarily living apart from the deceased. While they were separated at the time of his death yet there is no proof that it was ''voluntary'', nor was it mutual. The last time they lived together as a

family was in July 1941. They were behind in the payment of rent and for this reason were evicted by a lawful process. The petitioner testified: "We had to give up the place. We was *read out*. We had to go, and I went to my sister's at 918 Florida Street." "That was the only open door. There was no where else to go." She later moved to an apartment on West Virginia Street. In speaking of the continued separation Savannah was asked:

"Q. Did Earl ever come there to live? A. No, he didn't.

"Q. Was he welcome to come there to live with you? A. Of course he was; he was."

It further appears that during this separation the deceased made some small contributions to the family support, or rather to help the children. At one time the petitioner called upon the Juvenile Court to compel the deceased to make a contribution. Pursuant to this order he contributed $4.00 a week, but it was later discontinued. The petitioner claimed it was troublesome to have to go to court, and for this reason she did not pursue the matter any further. But he later made some voluntary contributions in small amounts.

 While it is correct to say that Savannah and Earl Moody were "living apart" it cannot be said as a matter of law, or stated as a sound legal conclusion, that Savannah was *voluntarily* living apart from the deceased at the time of his death. The facts do not warrant the conclusion that it was "mutual". This assignment of error must therefore be sustained.

Averting now to the assignments of error which raise the questions (1) as to the status of the marital relationship between petitioner and the deceased, whether or not

she was his "legal widow", and (2) whether the children are legitimate or illegitimate, dependent or otherwise.

The Statute upon which the petitioner bases her insistence that she was privileged to contract a second marriage is found in Code Section 8411, and reads as follows:

"Second marriage may be contracted after dissolution of first, or absence of other party for five years.—A second marriage cannot be contracted before the dissolution of the first. But the first shall be regarded as dissolved, for this purpose, if either party has been absent five years, and is not known to the other to be living."

The trial judge in construing this section of the Code held that the first marriage of petitioner could not be regarded as dissolved "unless the petitioner had reason to believe that her former spouse, Will Hudson, was dead, or, more properly, that he was not known to her to be living". He expressed the opinion "that the second marriage should be based on more than an honest belief that the former spouse is dead".

■ The foregoing Code Section has been relied on as a defense to an indictment for bigamy and bigamous cohabitation in several of our reported cases, particularly *White v. State*, 157 Tenn. 446, 447, 9 S. W. 2d 702; *Manahan v. State*, Tenn., 219 S. W. 2d 900; and *Jones v. State*, 182 Tenn. 60, 184 S. W. 2d 167, and in each of these cases the time which elapsed between the separation of the first marriage and the second was less than five years. It was held that an honest belief that a divorce has been granted was no defense to the charge. In other words where the second marriage was contracted and consummated within the statutory period the defense was not available. In the *White case* Mr. Chief Justice Green said:

"The decided weight of authority in this country is that, unless the parties have been separated and without knowledge of each other for such time, one contracts a second marriage at his or her peril, and is not protected by an honest belief that the former spouse is dead or has procured a divorce." [157 Tenn. 446, 9 S. W. 2d 703]

The only reasonable inference to be drawn from the opinion in this case is that "good faith" and an "honest belief that a divorce had been granted" is available only after the lapse of the statutory period. We are therefore constrained to hold that one does not contract a second marriage *at his or her peril* where it is contracted after the statutory period, and during which time the spouse's whereabouts is unknown.

The learned trial judge resolved the issue against the petitioner, that is that her second marriage was not legal because it was her duty to "make some investigation" to determine whether or not her first husband was dead or had obtained a divorce, all of which she failed to do. Had the petitioner been making a defense against an indictment for bigamy or bigamous cohabitation the holding of the trial judge could not be questioned. But it cannot be true especially in a civil proceeding where the rights of minor children are involved. To hold otherwise would be to bastardize every child of the second marriage because the mother failed to make some investigation as to the whereabouts of her former husband whose place of residence had been unknown to her, and who had not been heard from for more than five years

In *Bohlen-Huse Coal & Ice Co.* v. *McDaniel,* 148 Tenn. 628, 257 S. W. 848, 849, it is said:

"It is a familiar doctrine that in all cases, except prosecutions for bigamy and actions for criminal conversa-

tion, a marriage may be presumed, or be established by reputation after a lapse of many years." Citing cases.

In *Payne* v. *Payne,* 142 Tenn. 320, 332, 219 S. W. 4, 7, Mr. Chief Justice Lansden, in dealing with the question of marriage and the legitimacy of children, said:

"The courts have created presumptions in favor of divorce from the first marriage where there has been a second marriage, of the continuity of a marriage where such presumption is necessary to preserve the integrity of the family and the legitimacy of children, and has presumed the validity of the first marriage for the same reasons. All these presumptions have arisen from the concern of the law for the legitimacy of children, for the integrity of the family, and for the capacity of inheritance. These are all questions in which the public is interested, and this concern is felt at every stage of the inquiry. *Gamble* v. *Rucker,* 124 Tenn. 415, 137 S. W. 499; *Smith* v. *North Memphis Sav. Bank,* 115 Tenn. 12, 89 S. W. 392; *Johnson* v. *Johnson,* 1 Cold. 626, 630 [41 Tenn. 626]. Many cases upon the subject are referred to in 16 L.R.A., N. S., 98, in the footnotes to *Smith* v. *Fuller.*

. . . . . .

"That presumption is indulged to promote the things in which the public has an interest, and is not indulged on behalf of the parties themselves, is well illustrated by the cases of *Smith* v. *Bank, supra,* and the case of *Gamble* v. *Rucker, supra.* In *Smith* v. *Bank,* there was no other claimant of the estate except the widow, and in *Gamble* v. *Rucker,* children from two marriages were admitted into heirship, although the opinion shows that the first wife was living and present at the second marriage. The court presumed a divorce, and that both marriages were

legal. The outside authority is to the same effect.'' See also *Hall* v. *Hall*, 13 Tenn. App. 683.

 While Savannah Moody should have, as a matter of precaution, made some investigation as to whether or not her former husband was dead or divorced before contracting the second marriage, we hold that her failure to do so in no way militates against the validity of the second marriage. In other words it is not a condition precedent to her right to contract a second marriage. There are many well considered cases in which the courts have indulged the presumption that the first marriage had been dissolved or the spouse had obtained a divorce. *Ladner* v. *Pigford*, 138 Miss. 461, 103 So. 218, citing *Pittinger* v. *Pittinger*, 28 Colo. 308, 64 P. 195, 89 Am. St. Rep. 193; *In re Colton's Estate*, 129 Iowa 542, 105 N. W. 1008; *Patterson* v. *Gaines*, 6 How. 550, 12 L. Ed. 553, and other cases, also 18 R.C.L. 417. In *Sparks* v. *Ross,* 72 N. J. Eq. 762, 65 A. 977, 978, the Court, in dealing with presumptions favoring marriage, held: ''The power of the presumption of legality of such a marriage is found in the motives which govern human conduct and in the policy lying at the base of our social system. The conclusion of illegality involves the assumption that the parties have exposed themselves to the penal consequences of illegal acts and operates to bastardize their offspring.'' See 34 A.L.R. 468 and annotated cases. The cases further hold that where a marriage is shown to have been entered into, and solemnized according to law, the burden of proving its invalidity ''rests upon him who questions its validity, notwithstanding this requires proof of a negative''. 34 A.L.R. 468 and cases cited.

Since we have held that Savannah Moody was not voluntarily living apart from her husband at the time of

his death, and her marriage to him being legal in all respects it results that she is entitled to compensation as provided by our Workmen's Compensation Law. The assignments of error are sustained and the case is reversed and remanded for an award to the petitioner and such minor children as may be entitled to compensation, their right to an award to be made upon the basis of legitimacy and not illegitimacy.

All concur.