445 P.2d 970

**Rosana GALLEGOS, Appellant,**

**v.**

**Martha WILKERSON, aka Martha Holmes, Appellee.**

**No. 8605.**

Supreme Court of New Mexico.

Sept. 23, 1968.

Rehearing Denied Oct. 29, 1968.

550

Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, for appellant.

J. Benson Newell, Las Cruces, for appellee.

## OPINION

MOISE, Justice.

The question for determination is which of two persons, Rosana Gallegos or Martha Holmes, is the surviving spouse of Amarante Gallegos, deceased, also known as Bert Holmes.

The court found that decedent and Martha consummated a common law marriage in El Paso, Texas in November, 1937; that a subsequent purported civil marriage to Rosie Overstreet (Rosana) in Los Lunas, New Mexico on February 25, 1942 was void because at the time decedent was legally married to Martha, with whom he continued to live until his death in 1964. Based on these findings, the court concluded that Martha was the surviving spouse and that she was entitled to administer the estate and should be substituted as administratrix.

Rosana appeals, asserting two grounds, viz., that the court erred in refusing to find a common law marriage between deceased and Rosana in Colorado in 1922, and that it erred in finding a common law marriage between decedent and Martha in Texas in 1937.

The following facts, testified to by Rosana, are uncontradicted in the record and, she claims, required a finding of a common

law marriage between herself and decedent in Colorado in 1922. Rosana was born December 21, 1905 and met decedent in San Luis, Colorado; because Rosana's mother would not consent to a civil marriage of the two, they agreed to live together as husband and wife; decedent gave her a wedding ring inscribed with the date, March 27, 1922; they exchanged vows and lived together in San Luis, Colorado, holding themselves out as husband and wife. Rosana had three children by decedent; the first was born in New Mexico on September 4, 1924, about three months after they moved to New Mexico and, accordingly, must have been conceived in Colorado; the third child was born in Las Cruces in November, 1930. A birth certificate was introduced in evidence showing the parents of this last child as Bert Holmes and Bertha Mayers, claimed by Rosana to be an alias used by her to avoid detection.

Rosana testified that in 1935 she took the children and moved to Albuquerque because decedent was running around with Martha, but that he visited her frequently in Albuquerque and sent as much money as he was able for support.

The court found that on June 16, 1924 decedent married one Ursilita Bedan in Colorado, that they had one child, and were divorced March 22, 1937. As already noted, Rosana and decedent went through a civil marriage in 1942, but he evidently continued to live with Martha until his death in 1964.

■ Based on the above facts, did the court err when it failed to find a valid common law marriage established between decedent and Rosana in Colorado? If there were a common law marriage, and no divorce followed, it would seem clear that they remained husband and wife until his death. Poteet v. Poteet, 45 N.M. 214, 114 P.2d 91 (1941). In addition, although a valid common law marriage may not be consummated in New Mexico, In re Gabaldon's Estate, 38 N.M. 392, 34 P.2d 672, 94 A.L.R. 980 (1934), if valid where consummated, it will be recognized in New Mexico. §

57–1–4, N.M.S.A.1953; State v. Brem, 51 N.M. 63, 178 P.2d 582 (1947).

■ The foregoing detailing of facts testified to in the record notwithstanding, what is the situation when a trial court is requested to find the existence of a fact (the common law marriage in Colorado) and refuses to do so? The court here did not specifically find to the contrary, but made no finding on the issue, and then found a valid common law marriage between decedent and Martha entered into in 1937. The refusal or failure to make a requested finding on a material issue is held by us to be in effect a finding against the party having the burden of proof. J. A. Silversmith, Inc. v. Marchiondo, 75 N.M. 290, 404 P.2d 122 (1965); Stienbaugh v. Payless Drug Store, Inc., 75 N.M. 118, 401 P.2d 104 (1965). The burden of proving a common law marriage valid in Colorado being upon Rosana, the failure to so find is, under the above rule, a finding that no such marriage occurred.

■ Although the evidence was probably sufficient to support a finding of a valid marriage, was it error to find otherwise? We conclude that it was not. While we fully recognize that a court may not disregard uncontradicted evidence on a material issue and find to the contrary thereof, in the case of Medler v. Henry, 44 N.M. 275, 101 P.2d 398 (1940), we set down certain circumstances that would be considered as relieving a characterization of it as arbitrary. These were stated as follows:

"(a) That the witness is impeached by direct evidence of his lack of veracity or of his bad moral character, or by some other legal method of impeachment.

"(b) That the testimony is equivocal or contains inherent improbabilities.

"(c) That there are suspicious circumstances surrounding the transaction testified to.

"(d) That legitimate inferences may be drawn from the facts and circumstances

of the case that contradict or cast reasonable doubt upon the truth or accuracy of the oral testimony."

When we consider the testimony of Rosana in the light of these considerations we perceive that circumstances were present which could be considered as casting a measure of suspicion on the facts as they otherwise appear, and that certain permissible inferences contrary to the facts as testified to could reasonably be drawn. We mention only a few. The marriage contracted with Ursilita Bedan in June, 1924 is certainly evidence that would raise a question concerning Amarante's intention or belief that he was married to Rosana in 1922. Similarly, his relations with other women after coming to New Mexico and while living with Rosana, as testified to by her, although concededly indulged by some married men, may be considered as raising some question as to whether he considered himself married to Rosana. Although the civil marriage in 1942 can be explained as being entered into merely for the purpose of making a record of or ratifying the 1922 marriage, it can also be looked upon as a recognition that the parties were not married. It should not be necessary to detail more to demonstrate the suspicious circumstances present, or the possible legitimate inferences contrary to the testimony from the witness stand. It follows that the issue of Rosana's claimed common law marriage to Amarante in Colorado in 1922 is ruled against her.

■ How about Martha's claimed marriage in 1937 in Texas? The proof concerning it was not materially more convincing in the record than that of Rosana's. However, the court found as a fact that a common law marriage took place between Martha Wilkerson and Bert Holmes in El Paso, Texas in November, 1937. Is the finding supported by substantial evidence? There is no question that Texas permits and recognizes common law marriage, Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, L.R.A. 1915E, 1 (1913). Such a marriage is considered to be a status arrived at by express or implied mutual consent or agreement of the parties, followed by cohabitation as husband and wife and publicly holding themselves out as such. Grigsby v. Reib, supra. When there is evidence of these facts, the issue is for the fact finder, and when found to exist, may not be overturned on appeal. Compare Moore v. Jordan, 328 S.W.2d 343 (Tex.Civ.App.1959), writ ref., n. r. e. Such is the situation here. Proof is present that they went to El Paso, rented an apartment, agreed to a marriage between themselves, lived together there, and held themselves out as husband and wife. The finding of the court of a valid common law marriage in Texas is thus supported by substantial evidence and should not be disturbed by us. Armijo v. World Ins. Co., 78 N.M. 204, 429 P.2d 904 (1967); Ash v. H. G. Reiter Co., 78 N.M. 194, 429 P.2d 653 (1967).

■ We are not unmindful that Bert's participating in the 1942 marriage ceremony with Rosana, as well as his conduct after 1937 as testified to by Rosana might be considered as reflecting upon the validity of this marriage, as it did on the claimed Colorado marriage. However, the trial court believed that the marriage in Texas took place as claimed, and that the elements necessary to give it effect were present. When conflicts are present, it is not for us to pass on the weight of the evidence or credibility of the witness, such being reserved to the trier of the facts. Crumpacker v. Adams, 77 N.M. 633, 426 P.2d 781 (1967); Gruschus v. C. R. Davis Contracting Co., 75 N.M. 649, 409 P.2d 500 (1966). We must conclude that the finding as to the common law marriage of Bert and Martha in Texas is supported by substantial evidence and accordingly binding.

■ Appellant argues, however, that since both Martha and Bert were residents of New Mexico, public policy should intervene to prevent them from avoiding the demands of our law that a ceremony performed by an authorized person is required

to accomplish a valid marriage. §§ 57–1–1 to 57–1–3, N.M.S.A.1953. In re Gabaldon's Estate, supra. However, they overlook § 57–1–4, supra, which makes lawful "[a]ll marriages celebrated beyond the limits of this state, which are valid according to the laws" of the place where celebrated. No exception is made for residents of New Mexico. That we should not hold invalid a common law marriage contracted by these parties in Texas, even though residents of New Mexico, would seem to be the direction of the statute. It is likewise the rule recognized in proposed §§ 129, 131 and 132, Restatement (Second), Conflict of Laws (Tent. Draft No. 4, 1957). The rule would be otherwise if we had a statute specifically stating such a marriage is contrary to public policy or that § 57–1–4, supra, did not apply to residents. Compare Metropolitan Life Insurance Co. v. Chase, 294 F.2d 500 (3rd Cir. 1961), passing on the effects of a New Jersey statute specifically making common law marriages illegal. We have no comparable statute. Neither do we perceive that the fact that we do not permit common law marriages to be entered into in New Mexico indicates such an overriding public policy as to require that we hold invalid this marriage, legal in Texas where contracted. See proposed § 132, Comment (b), Restatement (Second), Conflict of Laws, supra. Compare Stilley v. Stilley, 219 Ark. 813, 244 S.W.2d 958 (1952); Vaughn v. Vaughn, 62 Cal.App.2d 260, 144 P.2d 658 (1944); McDonald v. McDonald, 6 Cal.2d 457, 58 P.2d 163, 104 A.L.R. 1290 (1936); Mazzolini v. Mazzolini, 168 Ohio St. 357, 155 N.E.2d 206 (1958); Keith v. Pack, 182 Tenn. 420, 187 S.W.2d 618, 159 A.L.R. 101 (1945).

We are thus brought to the conclusion that Rosana's claimed marriage in 1922 not having been proved, and the marriage to Martha being valid and free from impediments, Martha is the surviving widow of decedent as concluded by the trial court.

There was no divorce whereby this valid marriage was terminated and accordingly the ceremonial marriage to Rosana in 1942 was not effective. Poteet v. Poteet, supra.

There being no reversible error, the judgment appealed from is affirmed. It is so ordered.

NOBLE and CARMODY, JJ., concur.