600 P.2d 298

**In the Matter of the ESTATE of Leoma Joyce Doss WILLARD, Deceased.**

**Connie Royal PUGH, Jr., Petitioner-Appellee,**

v.

**Sparkye MABE, personal representative, Respondent-Appellant.**

**No. 3626.**

Court of Appeals of New Mexico.

Jan. 18, 1979.

Charles J. Crider, Albuquerque, for respondent-appellant.

Dick A. Blenden, Paine, Blenden & Diamond, Carlsbad, John R. Lee, Kermit, Tex., for petitioner-appellee.

## OPINION

WOOD, Chief Judge.

This interlocutory appeal in this probate case involves the validity of the trial court's ruling that Connie Royal Pugh, Jr. and Joyce, who died February 5, 1977, had entered a valid common-law marriage in Texas. The parties agree that New Mexico will recognize a common-law marriage as valid if the marriage was valid where consummated. *Gallegos v. Wilkerson*, 79 N.M. 549, 445 P.2d 970 (1968). The appellate issue is whether the evidence supports the requirements for a valid common-law marriage in Texas.

Vernon's Texas Codes Annotated, *Family*, Vol. 1, § 1.91 (1975) states:

(a) In any judicial, administrative or other proceeding, the marriage of a man and woman may be proved by evidence that:

\* . \* \* \* \* \*

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

See *Durr v. Newman*, 537 S.W.2d 323 (Tex. Civ.App. 1976).

■ . In 1969, Joyce and Pugh began living together in Jal, Lea County, New Mexico. Both were aware that Pugh was married and that they could not enter a valid marriage. Pugh obtained a divorce on March 9, 1970. After the divorce, Pugh could enter a valid common-law marriage in Texas. *Rodriguez v. Avalos*, 567 S.W.2d 85 (Tex.Civ.App. 1978); *Howard v. Howard*, 459 S.W.2d 901 (Tex.Civ.App. 1970).

■ The trial court found:

4. That after March 9, 1970, and specifically the Friday preceding Easter, Connie Royal Pugh, Jr. and Leoma Joyce Doss Willard contracted and agreed to enter into a marriage relationship in the State of Texas and consummated said marriage by cohabiting together as husband and wife in Abilene, Texas.

5. That immediately thereafter Connie Royal Pugh, Jr. and Leoma Joyce Pugh continuously and continued to cohabit one with the other in the State of Texas, both parties introduced themselves

as husband and wife, and held themselves out to be married to all people including the parents and family of the decedent.

6. That this relationship of husband and wife and holding out to the public as being married to all members of both sides of the family continued from the period of March, 1970, up to the death of the decedent.

7. That to further consummate and solidify the contract, the parties both bought wedding rings for each other and subsequent to the date of March, 1970, displayed said wedding rings as a symbol and indication of their marriage contract.

8. That the decedent used the name of Joyce Pugh during the period of her employment with the El Paso Natural Gas Company. The name was used for the purpose of obtaining credit through Bankamericard as well as other credit arrangements, and the decedent and Connie Royal Pugh, Jr. maintained a joint bank account in the name of Pugh, one of such banking accounts being in the State of Texas.

9. That the parties to this marriage, namely the decedent and Connie Royal Pugh, Jr., intended for the contract to bind them as husband and wife and they consummated the marriage by living and cohabiting together in the State of Texas and holding themselves out to the public and to friends and family in the State of Texas and elsewhere as husband and wife.

There is substantial evidence to support the findings which go to an agreement to marry and a public holding out, in Texas, that they were married. The dispute goes to the requirement that Joyce and Pugh lived together, in Texas, as husband and wife.

Pugh was employed as an oil field pumper in Texas; Jal was the closet place to live. Joyce and Pugh lived together, as husband and wife, from shortly after his divorce in March, 1970 until Joyce's death on February 5, 1977. Because their residence was in Jal, New Mexico, the question arises whether they lived together in Texas so as to establish a common-law marriage in Texas.

There is evidence that Joyce and Pugh visited Joyce's mother in Lubbock, Texas on an average of five or six times a year. They also visited Pugh's parents in Palestine, Texas. They stayed at a motel in El Paso, Texas for three days in connection with an awards banquet given by Joyce's employer and also stayed at a motel in Galveston, Texas. They visited and stayed with Pugh's brother-in-law in Lubbock, Texas, with Joyce's daughter in Canadian, Texas, and at a friend's home in Dimmit, Texas. These visits were more than casual; they "spent considerable time in Texas"; Pugh's mother testified they would "come down and spend two weeks at a time with us". In addition to their physical visitations to Texas, they maintained a joint account at a bank in Kermit, Texas. Joyce had surgery in a hospital in Andrews, Texas, wearing an identification band, "Mrs. Connie Pugh".

*Walter v. Walter*, 433 S.W.2d 183 (Tex. Civ.App. 1968) stated that the following definition was substantially correct: " 'The term lived and cohabited together as husband and wife means living together, claiming to be married and doing those things ordinarily done by husband and wife.' " *Walter*, supra, indicates that the living together need not be for any specified length of time, but there must be a constancy of dwelling together. *Durr v. Newman*, supra, states: "The short three-day period of time that the parties were together is not controlling".

The evidence supports the trial court's finding that Joyce and Pugh lived and cohabited together in Texas, and the trial court's conclusion that Joyce and Pugh entered a valid common-law marriage in Texas.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

HENDLEY, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent.

It does not require coruscations of genius to conclude that Connie and Joyce did not effect a common-law marriage in Texas because they had not "lived together in this state as husband and wife."

Connie and Joyce were domiciled in Jal, New Mexico from about the time they first met until the time of Joyce's death. During the years they lived together in New Mexico, they established a common-law marriage, one not recognized in New Mexico. During the years of this New Mexico relationship, Joyce never changed her will. Let us compare the New Mexico relationship with that of Texas. When Connie was asked to characterize all of his visits to Texas in the company of Joyce, he said:

My wife and I went on vacation, a week, two weeks, week-ends. Went for sickness, deaths.

Connie and Joyce never established residence or domicile in Texas. They never purchased or leased a place of residence and never lived together there as husband and wife on a temporary or permanent basis. We recognized a common-law marriage in the State of Texas. *Gallegos v. Wilkerson*, 79 N.M. 549, 445 P.2d 970 (1968). In doing so, Justice Moise said:

. . . Such a marriage is considered to be a status arrived at by express or implied mutual consent or agreement of the parties, *followed by cohabitation as husband and wife* and publicly holding themselves out as such. . . . Proof is present that they went to El Paso, *rented an apartment*, agreed to a marriage between themselves, *lived together there*, and held themselves out as husband and wife. . . . [Emphasis added.] [Id. 552, 445 P.2d 973.]

To cohabit means living together as man and wife within a common dwelling. *People v. Burke*, 400 Ill. 240, 79 N.E.2d 488 (1948); *Graham v. Graham*, 130 Colo. 225, 274 P.2d 605 (1954). It does not include mere visits or journeys. *Jones v. State*, 182 Tenn. 60, 184 S.W.2d 167 (1944); *Colley v. Colley*, 204 Va. 225, 129 S.E.2d 630

(1963). "Rather, the living together should be in the same house on a permanent basis." Davis, Common-Law Marriage in Texas, 21 Sw.L.J. 647, 652 (1967).

*In re Estate of Stahl*, 13 Ill.App.3d 680, 301 N.E.2d 82 (1973) did not recognize an alleged common-law marriage in Texas. Mrs. Stahl and decedent, who had lived together in Illinois, had travelled to Texas for a period of three days for purposes of a vacation and to consider whether Texas should be a future retirement site. They held themselves out as husband and wife during this stay in Texas and privately exchanged marital vows in their hotel room. Mrs. Stahl claimed she was the common-law widow of decedent and was entitled to an intestate share of decedent's estate. The court said: "No." She failed to establish that she and decedent had been domiciled in Texas. They had not contracted a common-law marriage.

The statutory provision that "they had lived together in this state" is equivalent to "has a domicile," *Holt v. Holt*, 253 Mass. 411, 149 N.E. 40 (1925); *Nelson v. Nelson*, 71 S.D. 342, 24 N.W.2d 327 (1946), or an established place of abode with which the parties may be identified as members of the community. *Kennedy v. Damron*, 268 S.W.2d 22 (Ky.1954).

52 Am.Jur.2d *Marriage*, § 46 (1970) says:

Despite its judicial acceptance in many states, the doctrine of common-law marriage is generally frowned upon in this country, even in some of the states that have accepted it. It has been declared contrary to public policy and public morals, and in view of the ease with which it can be contracted, it has been described as a fruitful source of perjury and fraud—to be tolerated and not encouraged.

One of the reasons is that "It puts in doubt the certainty of the rights of inheritance. It opens the door to false pretenses of marriage and the imposition upon estates of supposititious heirs." *Sorensen v. Sorensen*, 68 Neb. 500, 100 N.W. 930, 932 (1904), adhered to on rehearing, 68 Neb. 509, 103 N.W. 455 (1905).

A stringent test of common-law marriage required by a standard of strict scrutiny has the desirable effect of weeding out fraudulent claims where property rights are involved and the claimed spouse is dead. The Connie-Joyce New Mexico relationship is presumed to continue. Only upon clear and convincing proof of an actual common-law marriage in Texas wherein Connie and Joyce lived together there as husband and wife, can the New Mexico relationship be changed to one of marriage. Otherwise harsh and inequitable results will occur.

There is no evidence that Connie and Joyce intended to make Texas their home, residence or domicile. They did not live together in Texas as husband and wife.

Although I disagree with Judge Neal, I compliment him on stating the reasons for his decision. It is unfortunate that oral arguments were not recorded. Judge Neal seemed to have been without legal authority on the subject matter of common-law marriage. In his comments, he omitted any statements that Connie had established any form of residence, domicile, or cohabitation in Texas sufficient to prove a common-law marriage. In matters of this kind, memorandum briefs should be submitted to the court long before trial, not after the decision of the court. These comments are of little value because the vast majority of trial lawyers do not read these opinions to discover the art of presenting a case to a district court. The appellant's attorney on this appeal did not represent Mabe in the trial court.

The judgment of the trial court should be reversed.