652 P.2d 744 (1982)
98 N.M. 722
In re ESTATE OF Robert N. BIVIANS, Deceased.
Lorrayne BIVIANS, Petitioner-Appellant,
v.
Diana Bivians DENK, Claimant-Appellee.
No. 5468.
Court of Appeals of New Mexico.
August 19, 1982.
Certiorari Quashed October 20, 1982.
*746 Hunter L. Geer, P.A., Albuquerque, for petitioner-appellant.
Stephen Joseph Vogel, Sullivan, Villella, Skarsgard & Noya, Albuquerque, for claimant-appellee.

OPINION
DONNELLY, Judge.
This is an appeal by Lorrayne Bivians from an order of the district court determining heirship in her father's estate. The court concluded that appellee, Diana Bivians Denk, was the widow of decedent Robert N. Bivians by virtue of a common law marriage, that decedent's entire estate was community property, and that decedent died intestate.
The central points raised on appeal are: (1) whether the evidence and findings support the trial court's conclusion that appellee and decedent entered a valid common law marriage; (2) whether the quitclaim deed executed by appellee to decedent, conveying her interest in their residence, was supported by adequate consideration; and (3) whether stock in decedent's insurance agency was owned by decedent as separate or community property. We reverse.
Decedent initially employed appellee in 1969 to work in his insurance agency in Alamogordo. Appellee and decedent were then married to other spouses, but subsequently obtained divorces. Thereafter, appellee and decedent formed a close personal relationship. In December, 1971, after being pressured by business associates, they revealed to friends, relatives and business associates that they planned to marry. After a trip to California, Arizona, and Mexico, they returned to Alamogordo and announced that they were married. Decedent and appellee never entered into a valid ceremonial marriage. Decedent had purchased a wedding ring for appellee, which she exhibited after returning from their trip. The couple continued to live together in New Mexico until they separated in 1978. They remained separated until decedent's death in March, 1979. Decedent and appellee remained legally domiciled in New Mexico from the inception of their relationship through decedent's death.
At the time of decedent's divorce from his first wife, he owned 700 shares of stock in Western Insurance Agency, Inc., two automobiles, and other property. During the relationship of appellee and decedent they bought and sold several homes. In 1975, they purchased a residence in Albuquerque which decedent owned at the time of his death. It was then appraised at about $135,000.00, subject to a mortgage in the approximate amount of $35,000.00. When the couple separated in 1978, appellee remained employed in decedent's insurance business. She executed and delivered to decedent a quitclaim deed on the Albuquerque residence in return for payments by him of approximately $2,400.00 applied to the purchase of a mobile home. Appellee also received a substantial increase in her salary and a car.
The lower court found that appellee and decedent consummated a "martial [sic] relationship by cohabiting together as husband and wife in El Paso, Texas, in the early months of 1972 and in Colorado on at least several occasions in 1972."
The court also adopted the following findings:
9. That Robert N. Bivians [decedent] and Diana Bivians [appellee] lived together as husband and wife from December 1971, and during such time they continuously cohabited with one another in the States of Texas and Colorado, introduced themselves as husband and wife, held themselves to be married to all people including the mother and father of Robert *748 N. Bivians and the family of Diana Bivians.
... .
A. purchased and sold real property as husband and wife;
B. filed both federal and state income tax returns as husband and wife;
C. listed themselves on their employment records as husband and wife;
D. opened bank accounts as husband and wife;
... .
G. purchased shares of stock as husband and wife;
H. entered into a Real Estate Purchase Contract as husband and wife.
... .
13. The deceased, Robert N. Bivians died intestate and left a writing which purported to be his Last Will and Testament but was only witnessed by one person and referred to Diana Bivians as his "present wife."
The court concluded that decedent and appellee "were married under the common law statutes of Texas during the early months of 1972 and under the common law statutes of Colorado in 1972, and were husband and wife on the date of his death on March 3, 1979." In addition to its conclusion that the parties had entered into a common law marriage, the trial court also concluded that the quitclaim deed executed by appellee to the Albuquerque residence was invalid because of inadequate consideration, and that 2,077 shares of stock held by decedent in Western Insurance Company at the time of his death were community property.

I. Claim of Common Law Marriage

Appellant contends that the evidence is insufficient to support the trial court's findings and conclusion that the parties had entered into a valid common law marriage in Texas and Colorado. Appellant also attacks the sufficiency of the court's findings, asserting they do not support the court's conclusion that the parties had consummated a common law marriage.
In New Mexico, marriage is a civil contract which must be licensed. Dominguez v. Cruz, 95 N.M. 1, 617 P.2d 1322 (Ct.App. 1980); State v. Lard, 86 N.M. 71, 519 P.2d 307 (Ct.App. 1974). It is also a contract in which the public is interested and to which the state is a party. See § 40-1-10, N.M.S.A. 1978; see also Catlett v. Chestnut, 107 Fla. 498, 146 So. 241 (1933).
Although this state does not authorize common law marriages, it will recognize such marriages if valid in the jurisdiction where consummated. Gallegos v. Wilkerson, 79 N.M. 549, 445 P.2d 970 (1968); Matter of Estate of Willard, 93 N.M. 352, 600 P.2d 298 (Ct.App. 1979). New Mexico applies the rule of comity, that the law of the place of contract governs the validity of a marriage. Ferret v. Ferret, 55 N.M. 565, 237 P.2d 594 (1951).
Our inquiry must start with examination of the substantive laws of both Texas and Colorado. It is undisputed that when decedent and appellee returned from their "wedding trip," their travels had taken them to Arizona, California, Mexico, and back to New Mexico. Neither of these states recognize common law marriage, see H. Clark, Jr., Law of Domestic Relations § 2.4 at 45 (1968), and there is no suggestion that a "common law marriage" occurred in Mexico. Appellee also testified that during 1972 she and decedent made several business and pleasure trips to Texas and Colorado, which authorize common law marriage, and there held themselves out to be husband and wife.

(A) Texas Law

In Texas, the elements of a common law marriage are: (1) an agreement presently to be husband and wife; (2) living together as husband and wife in Texas; and (3) holding each other out there to the public as such. Tex.Fam.Code Ann. § 1.91(a)(2) (Vernon 1975); see Collora v. Navarro, 574 S.W.2d 65 (Tex. 1978); Humphreys v. Humphreys, 364 S.W.2d 177 (Tex. 1963); In re Glasco, 619 S.W.2d 567 (Tex. Civ.App. 1981).
*749 Applying these requirements, appellee failed to establish a present agreement to enter a valid common law marriage in Texas. Proof of a present intention to be married in Texas is essential.
In Texas, an agreement to be husband and wife may be implied; it need not be an express agreement and may be inferred from evidence which establishes the other two constituent elements of a common law marriage. Humphreys v. Humphreys, supra; In re Glasco, supra;
The rule is succinctly explained in Comment, Common-Law Marriage in Texas, 21 Sw.L.J. 647, 648 (1967), where it is noted:
An agreement between the parties to be husband and wife is essential to the creation of a common-law marriage. The trier of fact must specifically find that such an agreement existed, that the parties intended that their agreement create a marriage, and that it was to be an immediate and permanent relationship.
See also Schwingle v. Keifer, 105 Tex. 609, 153 S.W. 1132 (1913); Moore v. Jordan, 328 S.W.2d 343 (Tex.Civ.App. 1959); Associated Indemnity Corporation v. Billberg, 172 S.W.2d 157 (Tex.Civ.App. 1943).
Under Texas law, where the original relationship between the parties was illicit in origin but circumstances have changed, a subsequent common law marriage may be shown by circumstantial evidence. However, the evidence must exclude the inference that the original illicit relationship was intended to continue and must show formulation in Texas of a new matrimonial intent by each of the parties. Howard v. Howard, 459 S.W.2d 901 (Tex.Civ.App. 1970).
Because of the mobility of modern society, the possibility of fraud arising from claims of common law marriage and the uncertainty which such claims of marriage inject into the affairs of individuals, it is not enough to establish a common law marriage that the parties have together made occasional visits to a jurisdiction that recognizes common law marriages. Nor does an occasional holding out of marriage or mere sexual relationship in a state authorizing common law marriages result in the formulation of a bona fide marriage. Grant v. Superior Ct. in and for County of Pima, 27 Ariz. App. 427, 555 P.2d 895 (1976); Ex parte Threet, 160 Tex. 482, 333 S.W.2d 361 (1960). If the original relationship of the parties in New Mexico is illicit and the couple continue to maintain legal residence in New Mexico, a common law marriage cannot be inferred absent proof of each element necessary to establish a common law marriage and a showing of substantial contacts by the parties with the state where the alleged common law marriage occurred.
When the decedent and appellee returned from their alleged "wedding trip," they continued for several years to hold themselves out as married in this state and exhibited indicia of marriage, filing joint income-tax returns, purchasing realty in this state, and opening joint bank accounts. These events did not change the nature of their relationship. The law presumes that a status, relation, or intent proved to exist, continues as long as is usual with things of that nature. This applies to illicit relationships. McClendon v. Dean, 45 N.M. 496, 117 P.2d 250 (1941); see also Boykin v. State Industrial Accident Commission, 224 Or. 76, 355 P.2d 724 (1960); Cuneo v. De Cuneo, 24 Tex.Civ.App. 436, 59 S.W. 284 (1900). For an illicit relationship to become transmuted into a valid common law marriage, the evidence must show actual matrimony by mutual consent of each of the parties within the state authorizing common law marriages, plus each of the other elements required in that jurisdiction. Shelton v. Belknap, 155 Tex. 37, 282 S.W.2d 682 (1955). The evidence must be positive and satisfactory. If there is no direct proof of an agreement to enter a valid common law relationship, the agreement can be inferred from a showing of "consistent conduct of the man and woman, and by an uncontroverted reputation in the community in which they live." Walter v. Walter, 433 S.W.2d 183 (Tex.Civ.App. 1968), quoting Schwingle v. Keifer, supra.
An agreement to become husband and wife in New Mexico without a *750 valid ceremonial marriage evidenced by a proper license is of no effect. A holding out as husband and wife in this state without a valid marriage ceremony, no matter how long of duration, cannot ripen into a valid marriage between the parties. A meretricious relationship begun in this state does not change its character by virtue of brief sojourns or travels of the parties to states which sanction common law marriage. Texas law does not validate such unions. See Tatum v. Tatum, 241 F.2d 401 (9th Cir.1957); Kelly v. Consolidated Underwriters, 300 S.W. 981 (Tex.Civ.App. 1927), aff'd 15 S.W.2d 229 (Tex.Comm'n App. 1929). The rule is aptly stated in Dupre v. Rochester Ropes, Inc., 216 So.2d 589 (La. App. 1968). There, the court held:
"[W]here the contract of marriage is invalid under the law in the state in which it is made, the status of the parties thereafter will be regarded as being meretricious and ... that status will follow them during any stay in Texas, unless there is a new agreement of the marriage made in Texas, followed by cohabitation and a public holding-out, or unless they become domiciled in Texas. If the parties become domiciled in Texas, then in that event there is not necessity to prove a new agreement of marriage in Texas, but instead consent to a new marriage within that state will be inferred by reason of the original intent to marry if there be cohabitation in Texas and a public holding-out by the parties that they are husband and wife." [Emphasis added.]
Proof of legal residency in the common law marriage state is unnecessary. Lack of it is necessarily a factor to be considered, and mere visits to, or trips into the jurisdiction are not sufficient contacts with such a state to constitute the basis of an informal marriage under its law. Wharton and Wharton, 55 Or. App. 564, 639 P.2d 652 (1982).
Appellee cites Matter of Estate of Willard, supra, to support her contention that New Mexico will recognize as valid a common law marriage consummated in Texas by parties domiciled within this state. Willard, however, held that the nature of the couple's contacts and conduct in Texas were sufficient to establish the existence of the marriage. There also, the original agreement of the parties to be married was made in Texas and virtually all of their daily activities were conducted in Texas.
The focus of our concern here is to search for evidence as to the couple's actual intent to enter a marriage in Texas and the extent of their contacts with that state. The uncertainties resulting from claims of common law marriage often do not exist until one of the parties dies or seeks to remarry. Then, the actual issues, as here, frequently revolve around not only the intentions of the parties, but also around financial and property claims. As stated in Annot., Validity of Common Law Marriage in American Jurisdictions, 39 A.L.R. 538 (1925):
[T]here was a time, perhaps, when the doctrine of a liberal construction of the testimony and the slight proof of a common-law marriage subserved a useful purpose, but that that time is now passed... . "This ... doctrine" ... puts in doubt the certainty of the rights of inheritance. It opens the door to false pretenses of marriage and the imposition upon estates of supposititious heirs.
The necessity for clear proof that nondomiciliaries renewed their marriage agreement in a common law marriage state is to prevent marital status from accruing to parties who may not intend and rightfully may not expect such a consequence to flow from cohabitation in their non-common law state. Absent the requirement of such showing, formal marriages are placed too nearly on a level with meretricious cohabitation. In Goldin v. Goldin, 48 Md. App. 154, 426 A.2d 410 (Ct.Spec.App. 1981), the court stated:
[I]f the relationship is illicit in the beginning, strong evidence is required to demonstrate a change in the status.
.....
A common thread running through the cases is that of the intent of the parties. It is the same intent that must be found *751 whenever the existence of a contract is alleged, because, marriage, irrespective of whatever other adventurous undertaking it may be, is also a contract.
Goldin held that trips by a couple to a common law state, and there cohabitating and representing themselves as husband and wife, did not result in a marital status, absent proof of a clear intent to enter that status in the common law state. See also State v. Superior Court, 23 Wash.2d 357, 161 P.2d 188 (1945).
As noted by H. Clark, Jr., supra, at 56; [P]roof of a common law marriage under modern cases requires evidence of a course of conduct, of marital cohabitation. At the least, this would entail a stay of some duration in the nondomiciliary state before evidence of the requisite kind and amount could become available.
Where the couple was not domiciled in a common law marriage state, evidence of substantial contacts with the common law state must be presented. Grant v. Superior Ct., supra. Mere visits or transient travels into jurisdictions recognizing common law marriages are not sufficient to establish a valid marriage in the absence of proof as to a clear intention on the part of both parties to become husband and wife. See also Wharton and Wharton, supra.
In Texas, claims of common law marriage are closely scrutinized by the courts. Strict requirements necessitating proof of each of the elements of such marriage must be established before the courts will lend judicial sanction to any assertion that a marriage relationship exists. Middlebrook v. Wideman, 203 S.W.2d 686 (Tex. Civ.App. 1947); Chatman v. State, 513 S.W.2d 854 (Tex.Cr.App. 1974). The Texas requirements apply in this case inasmuch as the law of the place of the alleged marriage contract governs the validity of the marriage. Gallegos v. Wilkerson, supra; Ferret v. Ferret, supra. Independently of our obligation to apply Texas law, the requisites of proof should be no less in New Mexico, where cohabitation without marriage is contrary to public policy and declared a criminal offense. Section 30-10-2, N.M.S.A. 1978. Although Texas law determines the requisites of the asserted Texas common law marriage, New Mexico law determines the competency, admissibility, quality, degree and quantum of evidence required to establish the vital facts. State Nat. Bank of El Paso, Tex. v. Cantrell, 47 N.M. 389, 143 P.2d 592 (1943). The validity of the contract, however, must be determined by resort to the law of the state where the contract is alleged to have been made. Boggs v. Anderson, 72 N.M. 136, 381 P.2d 419 (1963).
We must view all the evidence presented below in a light most favorable to support the trial court's findings and conclusions and indulge in all reasonable inferences in support of the judgment, disregarding all inferences or evidence to the contrary. Lujan v. Pendaries Properties, Inc., 96 N.M. 771, 635 P.2d 580 (1981); Wirth v. Commercial Resources, Inc., 96 N.M. 340, 630 P.2d 292 (Ct.App.), cert. denied, 96 N.M. 543, 632 P.2d 1181 (1981). Under this standard, however, the evidence is insufficient to support a determination that decedent and appellee formulated a present agreement to become husband and wife in Texas.
Although the trial court adopted a conclusion of law that the parties had entered into a valid common law marriage in both Texas and Colorado, it did not adopt an express finding of fact that they mutually formulated a new agreement or had a present intention to enter into a common law marriage within either jurisdiction.
The strongest evidence relied upon by appellee bearing upon the intention of the parties while within the state of Texas was elicited during questioning by her attorney:
Q. Did you and Bob agree to be married?
A. Yes, we did.
Q. Did you agree to be married in Texas?
A. We agreed to be married wherever we were.
Q. Did that include Colorado?
A. Colorado.
*752 This testimony together with the other evidence does not indicate the formulation of a present agreement in Texas to enter into a valid common law marriage nor is it coupled with proof of substantial contacts of the parties with Texas. The direct evidence is insufficient to establish a new agreement to consummate a marriage within Texas. The circumstantial evidence, see Howard v. Howard, supra, of holding out as husband and wife during business and pleasure trips to Texas does not exclude the inference of a continuation of the original illicit relationship and does not permit an inference of a new matrimonial intent.
The court below failed to adopt a specific finding that decedent and appellee, while in Texas, had a present agreement to assume the relationship of husband and wife, as distinguished from an agreement to marry in the future, or a mutual intention to hold themselves out in New Mexico as being husband and wife. We conclude that the evidence did not support a finding of that nature and the couple's contacts with Texas were insufficient to establish the basis of a valid common law marriage in Texas.

B. Colorado Law

In Colorado the elements of a common law marriage are: (1) a contract or agreement of marriage in praesenti by the parties; (2) consummated by cohabitation as husband and wife; (3) plus, under certain situations, other attendant circumstances indicating an intention to assume the obligations of husband and wife. Graham v. Graham, 130 Colo. 225, 274 P.2d 605 (1954); Radovich v. Radovich, 84 Colo. 250, 269 P. 22 (1928); Taylor v. Taylor, 10 Colo. App. 303, 50 P. 1049 (1897). See also Common-Law Marriage [Colorado], 31 Dicta 451 (1954).
As explained further in Graham, quoting Taylor:

[T]he contract alone is not sufficient, unless it is followed by consummation; that is by cohabitation as husband and wife ... in cases where the contract or agreement is denied and cannot be shown, its existence may be proven by, and presumed from, evidence of cohabitation as husband and wife, and general repute. `Cohabitation,' as here, used means something more than sexual intercourse. Bouvier defines `cohabit' to be `to live together in the same house, claiming to be married,' Webster defines `cohabitation' as `the act or state of dwelling together, or in the same place with another.' ... `To cohabit is to live or dwell together, to have the same habitation... .' By `general reputation or repute' is meant the understanding among the neighbors and acquaintances with whom the parties associate in their daily life that they are living together as husband and wife, and not in meretricious intercourse... .' It is necessary that there be evidence both of cohabitation and reputation before such a marriage can be presumed. [Emphasis added.]
Appellee testified that she and decedent visited Colorado four or five times a year both for business and pleasure, and that they held themselves out there as husband and wife. Two New Mexico business associates corroborated that the couple had taken trips to Colorado. Decedent's sister-in-law testified that the couple visited her and her husband twice; the couple had stayed at a motel, and had been introduced as husband and wife at Colorado family gatherings. Decedent's brother and other friends also testified that the couple held themselves as man and wife during their visits to Colorado.
Appellee argues that the conduct of the couple outside Colorado gave rise to an inference of their intention to be husband and wife in Colorado since they agreed to be married wherever they were. Appellee contends that this evidence, together with the testimony of the other witnesses and indicia presented, was sufficient to establish a present intention to become man and wife in Colorado. We disagree.
Colorado, like Texas, requires that the existence of a common law marriage be proved by something more than mere living *753 together; the contract must be evidenced by association together, an agreement to consciously be husband and wife, and an open holding out of marriage. Klipfel's Estate v. Klipfel, 41 Colo. 40, 92 P. 26 (1907); In re Peters' Estate, 73 Colo. 271, 215 P. 128 (1923). Proof requirements similar to those we discussed in our determination of the Texas marriage issue apply to New Mexico residents attempting to prove consummation of a Colorado common law marriage. The couple must have sufficient contacts and evidence to show an intent to enter into a common law marriage in Colorado. See In re Binger's Estate, 158 Neb. 444, 63 N.W.2d 784 (1954). This is particularly true in Colorado. The language quoted above from Graham, supra, contemplates that a marriage agreement may be inferred from reputation and cohabitation of a consistent and daily nature. See In re Peters' Estate, supra.
Although New Mexico courts determine the quantum of proof here, we note the standard of proof applied by the courts in Colorado to prove a common law marriage is higher than that of Texas. To establish a presumption of marriage by cohabitation and repute, the marriage contract must be proven by clear, consistent, convincing and positive evidence. Employers Mut. Liability Ins. Co. v. Industrial Com'n, 124 Colo. 68, 234 P.2d 901 (1951); Peery v. Peery, 27 Colo. App. 533, 150 P. 329 (1915); compare In re Peterson's Estate, 148 Colo. 52, 365 P.2d 254 (1961).
The relationship having been originally meretricious, sufficient evidence of each element required by Colorado supported by substantial contacts with that state were required before a valid marriage could have been established. The evidence was insufficient to establish a present intention of the parties to become married in the State of Colorado.

II. The Quitclaim Deed

Appellant's second point asserts as error the trial court's finding that the quitclaim deed executed by appellee was not supported by adequate consideration.
As between husband and wife, a presumption is raised against the validity of transactions where the wife did not have competent and independent legal advice and gave up substantial benefits. This presumption is based upon the existence of a fiduciary relationship between the parties stemming from the marital relationship. Trujillo v. Padilla, 79 N.M. 245, 442 P.2d 203 (1968); see Hughes v. Hughes, 96 N.M. 719, 634 P.2d 1271 (1981). However, in the case of transactions entered into between unmarried parties, inadequacy of consideration alone, in the absence of fraud or a showing of other existing fiduciary relationship, will not void contracts or conveyances consummated between them. Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407 (1938); see Hendrix v. Dominguez, 58 N.M. 216, 269 P.2d 1099 (1954); Featherstone v. Walker, 43 N.M. 181, 88 P.2d 271 (1939); McCasland v. Prather, 92 N.M. 192, 585 P.2d 336 (Ct. App. 1978); see also Dominguez v. Cruz, supra.
In the absence of a valid marriage between the parties, independent evidence of a fiduciary relationship or fraud must be shown to exist. Here, the trial court made no such finding. No attack was made by appellee upon the sufficiency of the consideration for the quitclaim deed until after the death of decedent. The existence of a fiduciary relation, fraud or undue influence was not raised at trial in this case. The record does not contain evidence detailing the nature or amount of appellee's interest in the house other than as decedent's alleged common law widow. The trial court's conclusion that the deed was void was supported only by his findings of a valid marriage. Because we reverse on that point, and in the absence of other proof, we hold that the deed was not void.

III. Insurance Agency Stock

Appellant contends that the trial court erred in finding that the stock held by decedent at the time of his death in Western Insurance Agency was community property.
*754 Prior to his alleged marriage to appellee, decedent owned 700 shares of Western Insurance Agency, Inc. Appellee testified that decedent sold the shares to another company and subsequently reacquired them. The trial court found that since the stock was reacquired during the existence of a common law marriage of the parties, the stock was community property.
Although the evidence was conflicting as to whether the shares of stock acquired by decedent in 1975 were the same shares that he originally owned as separate property, the determinative factor which governs this claim on appeal necessarily turns on whether or not the parties were married when decedent reacquired this stock. See § 40-3-8, N.M.S.A. 1978.
Since we have found that the evidence was insufficient to support the existence of a valid common law marriage between appellee and decedent, this claim also must be decided adversely to appellee.
This cause is reversed and remanded to the trial court to vacate its judgment of heirship and for distribution of decedent's estate consistent with this opinion.
IT IS SO ORDERED.
WOOD and HENDLEY, JJ., concur.